**UNITED STATES of America,**

v.

**Bert GIGLI.**

**Crim. No. 82–174.**

United States District Court,
W.D. Pennsylvania,
Pittsburgh Division.

Oct. 25, 1983.

Timothy K. Lewis, Asst. U.S. Atty., Pittsburgh, Pa., for the Government.

Stephen Israel, Marianna Specter, Duffy, Israel, Schulberg & Specter, Pittsburgh, Pa., for defendant.

## OPINION

SIMMONS, District Judge.

On October 1982, a federal grand jury returned a three-count indictment against Bert and Edward Gigli charging them with a conspiracy to fraudulently transfer and conceal property of Union Forge, Inc., with the intent to defeat the provisions of Title 11 of the United States Bankruptcy Code. This indictment was the culmination of an undercover FBI investigation involving the bankruptcy of Union Forge, Inc.

Prior to the federal indictment, Union Forge was a Pennsylvania company which manufactured roof bolts used in the mining industry. To forge roof bolts, Union Forge used an assortment of equipment and heavy machinery housed at its facilities in Noblestown, Pennsylvania, which is the subject matter of this criminal action.

On September 28, 1979, Bert Gigli, the major shareholder and President of Union Forge, filed a petition for voluntary bankruptcy of the Union Forge, Inc. Following the petition, Bert Gigli remained President and debtor-in-possession of the Union Forge, Inc. However, on September 24, 1981, Union Forge was placed in involuntary bankruptcy by order of the Bankruptcy Court and a trustee was appointed. On that same day, the trustee filed a "Petition To Turnover Assets" with the Bankruptcy Court alleging that certain equipment and machinery had been removed from the Union Forge facility in Noblestown, Pennsylvania by Bert Gigli via four flatbed trailers. On October 1, 1981 the Bankruptcy Court entered an order directing Bert Gigli to return possession of the trailers to Union Forge. Through inadvertence, however, the court order made no reference to any equipment or heavy machinery which had been removed from Union Forge. The court order was served on Bert Gigli on October 5, 1981.

The FBI investigation began when Union Forge's principal debtor and the court appointed trustee lodged a complaint alleging that certain assets of the Union Forge, Inc., believed to be under the jurisdiction of the Bankruptcy Court, were missing from its Noblestown facility. The FBI investigation revealed that Bert and Edward Gigli had removed and concealed certain assets belonging to Union Forge.

Specifically, on the late evening of September 24, 1981 and through the early

morning of September 25, 1981 a private investigator observed heavy machinery and equipment loaded on three flatbed trucks being removed from the premises of Union Forge. In addition, the FBI obtained certified copies of a deposition wherein the deponent stated under oath that he and three other individuals, under the instruction of Edward Gigli, loaded four flatbed trucks with equipment from Union Forge and removed said equipment from the Union Forge premises.

Upon receiving this information and after having reviewed the Bankruptcy Court files, the FBI obtained a copy of a Small Business Administration (SBA) loan application signed by Bert Gigli on June 15, 1981 which contained a complete list of the type, quantity and serial numbers of all equipment then owned by Union Forge. Accompanied by a former employee of Union Forge, the FBI agents inventoried the Union Forge facility and thereafter determined, through comparison of the on-site inspection and the SBA loan application and through representation made by the former employee, that certain equipment and heavy machinery was missing from the Union Forge facility at Noblestown.

On April 1, 1982, undercover FBI agents, posing as potential purchasers, met with Bert Gigli in Pittsburgh, Pennsylvania and discussed with him the sale of certain equipment used in the production of roof bolts for mining. At that time Bert Gigli stated to the undercover agents that he owned a company which forged mine roof bolts and that the company had gone into bankruptcy. Also, Bert Gigli stated that he had some equipment from the company for sale and that while some people may have considered the equipment "hot" he did not feel that the equipment was "hot".

Subsequently, on June 2, 1982, undercover FBI agents met with Bert and Edward Gigli in Kingsport, Tennessee. Operating under the guise of inspecting the equipment's condition to firm up the purchase, the FBI agents were led by the Giglis to the Brookside Mini-storage facility located in Kingsport, Tennessee. There, the agents were shown several small manufacturing tools stored in a storage room under lock and key held by the Giglis and several pieces of heavy machinery stored under tarpaulins in an open lot at the rear of the Brookside Mini-storage facility.

At that time, the Giglis represented to the undercover FBI agents that the equipment at the Brookside Mini-storage facility was the same equipment removed from the Union Forge plant in Noblestown, Pennsylvania, which the Giglis had previously discussed selling to the undercover agents on April 1, 1982, in Pittsburgh. Furthermore, the FBI agents physically observed certain equipment bearing identical serial numbers to the equipment listed on the SBA loan application which had been signed by Bert Gigli and determined to have been missing from the Noblestown facility through the FBI's earlier independent investigation of the Noblestown facility.

On the basis of their investigation, the FBI agents drafted an affidavit for a search warrant reciting the details and the results of their surveillance and investigation of Bert and Edward Gigli. Attached to the affidavit for a search warrant, as exhibits, were the "Petition to Turnover Assets" filed with the Bankruptcy Court by the trustee, the Bankruptcy Court order directing Bert Gigli to return certain items to the trustee, the SBA loan application, and the itemized list of equipment and heavy machinery inventoried by the FBI agents. Contrary, however, to the express language of the Bankruptcy Court order, paragraph ten of the agents' affidavit erroneously stated that the Bankruptcy Court had "entered an order ... directing that any property removed from Union Forge on flatbed trucks be returned to the trustee of Union Forge," when in fact the Bankruptcy Court had, through inadvertence, only ordered the return of the flatbed trucks. On the basis of the FBI representations, the magistrate issued a search warrant on June 3, 1982, authorizing the agents to search the Brookside Mini-storage facility.

## I. THE MOTION TO SUPPRESS IS DENIED.

The defendant, Bert Gigli, in his motion to suppress has challenged the search warrant on two grounds. First, the defendant alleged that the search warrant is constitutionally overbroad in that it is not limited to the sub-unit wherein the concealed equipment and machinery was alleged to have been stored, but permits a search of the entire Brookside Mini-storage facility. To this end, the defendant argued that the search warrant violates his Fourth Amendment rights because it does not particularly describe the place to be searched or the things to be seized. Secondly, the defendant argued that the affidavit for the search warrant was based upon either false information or information supplied with a reckless disregard for the truth and should therefore be suppressed.

### a. THE SEARCH WARRANT WAS NOT OVERBROAD BECAUSE PROBABLE CAUSE EXISTED TO JUSTIFY A SEARCH OF THE ENTIRE BROOKSIDE MINI–STORAGE FACILITY.

■ In this case the government had sufficient information to reasonably believe that assets of Union Forge, Inc. had been removed from its facility in Noblestown, Pennsylvania while under the jurisdiction of the Bankruptcy Court. Investigators had observed several tractor-trailer loads of heavy machinery spirited away in the still of night from the Noblestown facility of Union Forge. A list of the equipment believed to have been removed was compiled by the investigating agents. The same items were subsequently offered for sale by the defendant to undercover agents. Two months later, the defendants escorted undercover agents posing as potential purchasers to the Brookside Mini-storage facility in Kingsport, Tennessee. The identity and serial numbers of the equipment and machinery stored at Brookside corresponded to that which had been earlier removed from Union Forge. In fact, the defendant stated to undercover agents that the equipment stored at the Brookside Mini-storage facility was the same equipment which had been used to forge roof bolts at Union Forge in Noblestown, Pennsylvania.

Under the foregoing facts, a probability existed that a crime had been committed and that the equipment stored at the mini-storage facility was evidence of that crime. To justify the issuance of a search warrant the standard of probable cause is a probability, not a prima facie showing of criminal activity. *See Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). Under *Spinelli* "probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense ... and their determinations of probable cause should be paid great deference by reviewing courts." *Id.* (citations omitted).

Here, the search warrant sufficiently and specifically described the storage area and the lot where the equipment was concealed and where the search warrant was to be executed. The exhibit attached to the search warrant described the specific items to be seized. To the extent that the defendant argues that the entire storage facility was improperly subject to search under the search warrant, the law is clear that when agents executing search warrants are aware that contraband evidence exist in a specifically described location, they are permitted to review the entire contents to ascertain if it is the evidence which is sought pursuant to the search warrant. *See Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). Neither the affiant nor the issuing magistrate could portend the extent to which equipment may have been unlawfully stored in other parts of the storage area rented by the defendant. The possibility existed that equipment may have been stored in other storage units. In this regard, the agents and the issuing magistrate are not to be limited by hypertechnical niceties, but may exercise their common sense judgment in the issuance and execution of the search warrant.

Federal courts generally hold that when a building under suspicion is divided into more than one occupancy unit, probable cause must exist for each unit to be searched. *See United States v. Hinton,* 219 F.2d 324 (7th Cir.1956). The Fourth Amendment requirement that a place be particularly described, when applied to dwellings, refers to living units or a residence. In this case, the cases voiding a warrant which fails to specify the particular sub-unit to be searched within a multiple occupancy structure are inapplicable. This is because the search warrant herein challenged involves a rented storage area, not a multiple-family dwelling which typically falls within the highly protected zone of privacy recognized by the Fourth Amendment as securing the individual a private inner sanctum.

In addition, this Court holds that under the facts of this case probable cause existed to search the entire mini-storage facility, therefore we are not constrained by the rationale of the multi-unit cases. *See United States v. Gill,* 623 F.2d 540 (8th Cir.), *cert. denied,* 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980). This Court interprets the search warrant as properly permitting a search and seizure of evidence relevant to the crime of conspiracy and concealment of property with the intent to defeat the bankruptcy law, namely, the items listed in the exhibit attached thereto. In any event, in this circuit, a warrant which is overbroad in its description is valid when the only sub-unit searched in a multi-unit structure was that for which probable cause was clearly established at the time of the issuance of the warrant. *See United States v. Bedford,* 519 F.2d 650 (3d Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976). At the evidentiary suppression hearing there was no showing that the agents searched any storage area other than those areas rented by the Giglis. Absent such a showing, there are no grounds for suppression of the warrant.

Also, the defendant's argument that the warrant lacked particularity because it does not specifically name the defendant as belonging on or possessing the premises to be searched is without merit. The particularity standard merely requires that the warrant be sufficient to enable the officer armed with it to ascertain and identify with reasonable efforts the place to be searched and the things to be seized. *See Steele v. United States,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925). *See also Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); *United States v. Bedford,* 519 F.2d 650 (3d Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976). In these regards the warrant is adequate. This Court holds that the search warrant was properly based upon probable cause to search the Brookside Mini-storage facility for specific equipment listed as an exhibit attached to the warrant.

### b. THE AVERMENTS CONTAINED IN THE SEARCH WARRANT AFFIDAVIT ARE NOT DELIBERATE FALSITIES NOR WERE THEY MADE WITH A RECKLESS DISREGARD FOR THE TRUTH

The defendant Bert Gigli also seeks to suppress the search warrant affidavit on the ground that information contained in the affidavit was false or was made with a reckless disregard for the truth. The defendant's false swearing argument primarily focuses on paragraph ten of the indictment, which states that:

Special Agent Smith informed [the affiant] that she personally reviewed the papers and pleadings of the Bankruptcy Court and that on October 1, 1981 the judge of the Bankruptcy Court entered an order (attached hereto as Exhibit "A") directing that any property removed from Union Forge on Flatbed trucks be returned to the trustee of Union Forge.

The crux of the defendant's argument is that the Bankruptcy Court did not in fact order a return of any property removed from Union Forge, but only ordered the return of the trucks upon which the property had been removed.

To challenge the veracity of a warrant affidavit there must be allegations of deliberate falsehood or of reckless disregard for the truth; allegations of negligence or innocent mistake are insufficient. *See Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). Even upon a showing of reckless disregard or deliberate falsity, a search warrant will not be suppressed if, setting aside the falsity, there remains sufficient content in the warrant affidavit to support a finding of probable cause. *Id.* The *Franks* Court recognized that not every allegation in an affidavit need necessarily be correct given the nature of the warrant affidavit itself. To this end, the Court noted that:

> "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.

*Id.* at 164–65, 98 S.Ct. at 2681.

In this case the alleged inaccuracies in the affidavit were of only peripheral relevancy to the showing of probable cause, and not having been within the personal knowledge of the affiant, did not go to the integrity of the affidavit. The misstatements were not those of the affiant, therefore there has been no showing that the affiant acted in bad faith or that he made intentional misrepresentations to the magistrate in securing the warrant. *See Rugendorf v. United States,* 376 U.S. 528, 533, 84 S.Ct. 825, 828, 11 L.Ed.2d 887 (1964).

The errors appearing in paragraph ten of the affidavit are precisely the type of "negligent or innocent mistakes" that the *Franks* Court declared to be insufficient to necessitate the statement's excision or the affidavit's suppression. The law provides that a warrant may be invalidated for misstatements in an affidavit only if the misrepresentations were intentional and material. In this case, this Court finds that the erroneous recitations in the affidavit were neither deliberately false nor material. Moreover, because the actual court order was attached to the affidavit to permit a fair and independent appraisal of the affidavit by the issuing magistrate, this Court is compelled to conclude that the misstatements were simply mistakes, and were not engendered by a desire to misrepresent the facts or to otherwise deceive the magistrate.

In addition, even if this Court were to excise paragraph ten of the affidavit, probable cause would nonetheless exist to justify the issuance of a search warrant.

## II. THE MOTION TO DISMISS IS DENIED.

The defendant Bert Gigli's motion to dismiss alleges that the indictment must be dismissed because the defendant received no notice of the conversion from bankruptcy under Chapter 11 to bankruptcy under Chapter 7 of the United States Bankruptcy Code, and because the indictment contains certain inaccuracies which allegedly cannot be cured through an amendment.

Paragraph five of the indictment provides that "[o]n or about September 24, 1981, Union Forge was placed in involuntary bankruptcy under Chapter 7 of Title 11, United States Code." The defendant argues that this paragraph is imprecise because it inaccurately uses the term "involuntary" and can only be cured by deleting that term. However, the defendant contends that such an amendment is improper because it would alter the indictment and thereby usurp the province of the grand jury.

Generally stated, an amendment to an indictment that is substantial or material, and not merely one of form, is impermissible. *See United States v. Goldstein,* 502 F.2d 526, 528 (3d Cir.1974). An amendment to an indictment is only authorized

when it relates to form and not substance. *See generally United States v. Fawcett,* 115 F.2d 764 (3d Cir.1940). On the other hand, a dismissal of an indictment is only warranted where the variance in an indictment is a "modification in the elements of the crime charged" or there is some substantial prejudice to the rights of the defendant. *See United States v. Somers,* 496 F.2d 723 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). *See also United States v. Crocker,* 568 F.2d 1049 (3d Cir.1977). A variance in the language of the indictment and the proof does not prejudice the defendant if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and will not be misled or surprised at trial and the variance will not present a danger that the defendant may be prosecuted a second time for the same offense. *United States v. Somers,* 496 F.2d at 746.

█ In the instant case, the defendant is sufficiently apprised of the charges against him and of the elements the government intends to prove. The alleged inaccuracies of the indictment does not alter in any manner the elements of the criminal offense charged. The grand jury has charged that the defendant entered into a conspiracy to fraudulently conceal property with the intent to defeat the provisions of the bankruptcy code. That Union Forge was arguably in voluntary bankruptcy, as opposed to involuntary bankruptcy, is of no moment, because the nature of the proceeding is not an element of the crime charged. Because the defendant is sufficiently apprised of the crime charged and the alleged inaccuracy does not relate to an element of the offense and no showing of prejudice has been made, under the *Somers* rationale there is no basis for dismissal.

█ The defendant also argues, as a ground for dismissal of the indictment, that he was not given notice of the Chapter 7 bankruptcy proceeding until after the removal of the equipment from the Union Forge plant. Therefore, contends the defendant, his removal of the equipment was lawful because he was a debtor-in-possession under the Chapter 11 bankruptcy proceeding.

Under Title 18 of the United States Code it is a criminal offense to transfer or conceal property with the intent to defeat the provisions of Title 11 of the bankruptcy laws. *See* Bankruptcy Act, 18 U.S.C. § 152 (1978). A transfer with knowledge that bankruptcy proceedings are underway and a concealment thereafter is a violation of the Act. Thus, whether Union Forge was in voluntary bankruptcy under Chapter 11 or in involuntary bankruptcy under Chapter 7, the indictment sufficiently alleges a criminal offense against the defendant. Moreover, the defendant cannot reasonably argue that a clandestine removal of manufacturing equipment in the still of night is the ordinary course of business for Union Forge. Hence, the argument that the defendant acted within the bounds of his authority as a debtor-in-possession is against the clear facts and totally without merit.

This Court is not persuaded by the defendant's notice argument. Because the indictment alleges a concealment and a conspiracy continuing after the defendant allegedly received notice in October, 1982, the defendant's notice argument is misplaced. While the defendant alleged that he received no notice of the involuntary conversion before October 1982, he makes no argument concerning post-October notice. Moreover, the facts indicate that the defendant's involvement in the alleged conspiracy and concealment continued well beyond October. Thus, assuming that notice was a dispositive factor, the indictment sufficiently alleges acts occurring after October, 1982 which sufficiently supports the defendant's involvement in the conspiracy and concealment. For these reasons the motion to dismiss the indictment is hereby denied.