521 A.2d 422

**In re SEARCH WARRANT B–21778**

**Appeal of Robert GARTLEY, Sr.**

Supreme Court of Pennsylvania.

Argued March 4, 1986.

Decided Feb. 24, 1987.

Papadakos, J., concurred in result.

John F. Hooper, Meyer, Unkovic & Scott, Pittsburgh, for appellant.

David M. McGlaughlin, Philadelphia, for amicus curiae Nat. Ass'n of Criminal Defense.

Richard A. Linzer, Sr. Deputy Atty. Gen., Greensburg, Marion E. MacIntyre, Associate Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

This case presents us with a potential conflict between the legitimate governmental interest of law enforcement officers to secure evidence of crimes, and the constitutional protection of confidential transactions between attorney and client.

Early in 1982, the Medicaid Fraud section of the Office of the Attorney General of Pennsylvania began an investiga-

tion into suspected illegal activity relating to the purchase of exposed x-ray film from hospitals. A market exists for the exposed film because silver may be reclaimed from it through a refining process. In February, 1982, an agent from the Attorney General's office interviewed appellant, Robert Gartley, Sr., at his home/office. They learned from him that he is in the business of buying and selling x-ray film and that several western Pennsylvania hospitals are among his suppliers. He further told the agents that depending on the particular hospital he paid for the film by check made to the order of the hospital, or made to the order of an employee of the hospital such as an x-ray technician, or to one or the other on alternate occasions. At one hospital he often divided up the total payment into two checks, one made to the order of the hospital and another made to the order of an employee. He also stated that an x-ray technician at another hospital from whom he regularly purchased x-ray film had advised him that the payments were for a "slush fund" at the hospital. During this interview, appellant held a checkbook which he identified as his "business checkbook" from which the checks made to the hospitals and their employees were drawn.

Further investigation revealed that individual employees at the respective hospitals were not authorized to receive personal payments for the film. One of the x-ray technicians who admitted receiving personal payments stated that appellant approached him, after hearing of difficulties he was having in his personal life, with the suggestion that he could receive money for the sale of hospital film.

The procedure Mr. Gartley allegedly followed was that he would arrive at the hospital, weigh the film, and determine its value. He would then ask the technician how much money he wanted for the sale. Appellant would make a check to the technician for the amount requested and another for the remaining balance to the hospital. A weight receipt would be made out corresponding to the amount of money received by the hospital. Appellant told the technician that "everyone was doing it" and that "he did it for a

lot of people." An interview of the chief x-ray technician of another hospital confirmed the existence of the "slush fund" alluded to by appellant.

On July 20, 1982, agents of the Attorney General's office obtained a search warrant for appellant's home/office in order to seize his business records. They learned upon executing the warrant that appellant had given his business records to his attorney, James Voss, Esquire, after the February interview. Voss was contacted by telephone by a deputy attorney general and confirmed that he represented appellant and that he had some of his business records. However, he refused to hand the records over to the investigators.

The next day, July 21, 1982, the investigators obtained a search warrant for Voss' law offices. The warrant stated that the items sought were "documents, records, items or their equivalents, of Robert Gartley, Sr., involved in any type of purchase or transactions for x-ray film involving certain hospitals from August 1, 1977 to the present." It specified these items to include cash disbursement registers and journals; bank statements, cancelled checks, and check stubs; check vouchers and related material weight receipts for x-ray film; purchase recording journals; hospital accounts payable ledgers; records pertaining to gifts, commissions, and other payments to those hospitals' employees; contracts for the purchase of x-ray film from those hospitals; and "[a]ny and all records which may reflect any type of transaction involving the purchase of x-ray film from those hospitals and from those hospitals' employees." The premises to be searched were described in the warrant as the "office of Meyer, Unkovic and Scott, and James Victor Voss, and their files, located at 1400 Frick Building, Grant Street, Pittsburgh, Pennsylvania."

The law firm immediately sought injunctive relief and, while the search was going on, the Honorable Thomas A. Harper of the Allegheny County Court of Common Pleas temporarily enjoined the agents from continuing. A hearing before the Honorable James R. McGregor was held the

next morning, and on August 5, 1982, the judge granted the law firm's motion to quash the search warrant. He concluded that the warrant was overbroad because of its failure to specify the area to be searched with reasonable particularity, thereby violating the Fourth Amendment, especially in light of the availability of less intrusive procedures such as a grand jury's power to subpoena relevant unprivileged evidence. Judge McGregor also found that permitting the search would violate the attorney-client privilege and the work-product doctrine. The Commonwealth appealed to the Superior Court, 341 Pa.Super. 350, 491 A.2d 851.

That court found that on its face the warrant met the constitutional requirements of particularity. Reasoning that the investigators could reasonably assume that Voss would have access to many areas within his firm's office, and that the investigators had no legitimate means of gathering information from which they could narrow the scope of this warrant, the court concluded that the description of the area to be searched was not overbroad. In addition, the court held that neither the attorney-client privilege, nor the work-product doctrine, applied to the items to be seized, since they were pre-existing documents which could have been subpoenaed from the client or made the subject of a validly drawn search warrant for the client's home or office.

Next, the court addressed the problem of the likelihood that truly confidential communications of appellant and other clients could be inadvertently examined by an inquisitive investigator. In its analysis the court had no particular concern for appellant's interests in confidentiality, since any intrusion into the private communications between him and attorney Voss would be attributable to appellant's own conduct in transferring the records to his attorney's care. They concluded that to hold otherwise would allow a criminal suspect to shield evidence from discovery in the haven of his attorney's office.

As to the rights of other "innocent" clients of an attorney whose office is made the subject of a search warrant, the Superior Court first noted that searches of law offices where the attorney is the target of a criminal investigation have been consistently upheld. *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955 (3rd Cir. 1984). Secondly, regarding non-suspect attorney's offices, the court relied upon the United States Supreme Court decision in *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), in which it was held that the First Amendment interests assertedly threatened by warrants for searching newspaper offices were sufficiently protected by applying Fourth Amendment warrant requirements with particular exactitude.

The Superior Court reasoned that since the attorney-client privilege is no more expressly mandated by the United States or Pennsylvania Constitutions than is the press privilege relied upon in *Zurcher*, and given the "preferred place" assigned to First Amendment freedoms, *Wm. Goldman Theatres v. Dana*, 405 Pa. 83, 173 A.2d 59 *cert. denied, Dana v. Wm. Goldman Theatres*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961), the Sixth Amendment interests in the attorney-client relationship were entitled to no greater protection than the interests recognized in *Zurcher*.

Finally, the Superior Court rejected the trial court's assertion that there were less intrusive means by which some information could be acquired, specifically a subpoena *duces tecum*. The Court correctly pointed out that a judicial subpoena pursuant to 42 Pa.C.S. § 5905 [1] may not be issued absent a pending proceeding. *See Commonwealth v. De-John*, 486 Pa. 32, 41, n. 5, 403 A.2d 1283, 1287, n. 5 (1979); *Commonwealth v. Polak*, 438 Pa. 67, 263 A.2d 354 (1970).

---

**1.** 42 Pa.C.S. § 5905 provides:
> Every court of record shall have power in any civil or criminal matter to issue subpoenas to testify, with or without a clause of duces tecum, into any county of this Commonwealth to witnesses to appear before the court or any appointive judicial officer. Subpoenas shall be in the form prescribed by general rules.

Act of October 5, 1980, P.L. 693, No. 142, § 501(a).

The Superior Court also rejected the lower court's suggestion that empaneling an investigating grand jury with its subpoena powers was a less intrusive, yet viable, means, relying again on *Zurcher*, wherein the Court stated:

> The Fourth Amendment has itself struck the balance between privacy and public need, and there is no occasion or justification for a court to revise the Amendment and strike a new balance by denying the search warrant in the circumstances present here and by insisting that the investigation proceed by subpoena *duces tecum*, whether on the theory that the latter is a less intrusive alternative or otherwise.

*Id.* 436 U.S. at 559–60, 98 S.Ct. at 1978. The court reasoned that Pennsylvania courts would not be inclined to extend greater protection under Article I, Section 8 of the state Constitution than required by the federal Constitution since our courts have not chosen to do so in the case of bank records, *Commonwealth v. DeJohn, supra,* and physician's records, *Commonwealth v. Santner,* 308 Pa.Super. 67, 454 A.2d 24 (1982), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3585, 82 L.Ed.2d 883 (1984). The court was satisfied that the Fourth Amendment's reasonableness requirement will adequately safeguard the Sixth Amendment interests of these other clients.

Petitioner sought allowance of appeal from this Court, which was granted. In this appeal appellant challenges the warrant on grounds of overbreadth and reasonableness. We reject these challenges and affirm the order of the Superior Court.

■ As to appellant's first issue, we agree that the search warrant in question met the requirements of Article I, Section 8 of the Pennsylvania Constitution,[2] and the Fourth Amendment, as to reasonable particularity.

The list of items to be seized was specifically limited to materials relating to appellant's transactions with the

2. Article I, Section 8 provides in relevant part that "no warrant to search any place or to seize any person or things shall issue without describing them as nearly as they may be ..."

named hospitals and their employees. Based on the affidavit of probable cause any and all of the enumerated items could, within a reasonable degree of probability, contain evidence of the alleged fraudulent scheme. We note that a similar challenge to the breadth of the description of items to be seized from an attorney's office was rejected by the United States Supreme Court in *Andresen v. Maryland, supra.* The Court there held that all of the many bits of documentary evidence may have had some relevance that, once pieced together, could prove the illegal scheme. *Id.* 427 U.S. at 480–81, n. 10, 96 S.Ct. at 2748–49, n. 10.

■ Appellant's alternative contention, that the warrant failed to define with particularity the place to be searched, is also meritless. To require a narrower scope to the place to be searched in this case, such as limiting the search to Attorney Voss' personal office, is to avoid the reality that attorneys do not invariably store their files within the confines of their personal office. *See United States v. Lebovitz,* 506 F.Supp. 249 (W.D.Pa.1980) *cert. denied, Lebovitz v. United States,* 456 U.S. 929, 102 S.Ct.1979, 72 L.Ed.2d 446 (1982) (search of a law office to seize twenty-five specifically named client files in a law firm with hundreds of files held not general or exploratory); *United States v. Gigli,* 573 F.Supp. 1408 (W.D.Pa.1983) *cert. denied, Gigli v. United States,* 470 U.S. 1008, 105 S.Ct. 1369, 84 L.Ed.2d 388 (1985) (where, under the facts, probable cause existed to search an entire mini-storage facility warrant need not specify a particular sub-unit to be searched). Here, the investigators had no legitimate means of discovering information to narrow down the location of the records. *See Commonwealth v. Andujar,* 264 Pa.Super. 326, 399 A.2d 1074 (1979). Thus, the warrant was not overbroad.

Appellant's second argument is that the search authorized by the warrant was so intrusive into zones in which he and others had a legitimate expectation of privacy as to render it unreasonable, and therefore, violated his rights under the Fourth Amendment to the United States Constitu-

tion[3] and Article I Section 8 of the Pennsylvania Constitution.[4] We disagree.

We begin our analysis by emphasizing that the cited constitutional provisions do not prohibit all searches, but only those which are unreasonable. *See Combs v. United States*, 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972); *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). *See also, Commonwealth v. Strickland*, 457 Pa. 631, 326 A.2d 379 (1974); *Commonwealth v. One 1958 Plymouth Sedan*, 418 Pa. 457, 211 A.2d 536 (1965). Neither constitutional provision affords a definition of reasonableness. However, it is well established that the benchmark for reasonableness is whether the authorities have probable cause to believe a crime is being or has been committed, and/or that the items to be seized are fruits, instrumentalities, or evidence of the crime, and that they are presently located in the particular place to be searched. *Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582, *cert. denied, Pennsylvania v. Jackson*, 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975); Pa.R.Crim.P. 2002.

In applying for a warrant reasonableness is determined by the application of the judgment of a neutral magistrate to the facts and circumstances of the proposed search. *Zurcher, supra. See also Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982). Pa.R.Crim.P. 2003.

In this case there is no question that the affidavit in support of the request for the warrant averred sufficient facts to convince a magistrate that the records sought

**3.** The Fourth Amendment provides:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**4.** Article I Section 8 of the Pennsylvania Constitution provides:
   The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures and no warrant to search any place or to seize any persons or things shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation subscribed to by the affiant.

contained evidence of crime, and that they were then located in the office of the law firm. Appellant does not argue the contrary. The affidavit alleged that on the occasion of a previous search of his home both he and his wife stated that his attorney was then in possession of his business records. In addition, Mr. Voss, appellant's attorney, and Mr. Hooper, attorney for the law firm, on separate occasions made statements which confirmed the location of the records. Thus probable cause for the search was established.

Hence the case turns on whether the competing interests alleged by appellant are of such magnitude as to compel us to deny enforcement of an otherwise valid warrant.

Appellant's argument on this issue is two pronged. First, he asserts that the proposed intrusion into his personal privacy interests, and those of his attorney, would have: violated his attorney-client privilege, the work-product doctrine, his Sixth Amendment right to effective assistance of counsel, and forced the attorney to violate the confidentiality of his communications. Secondly, he asserts that such a proposed search necessarily implicates the same rights and privileges of the law firm's other clients and attorneys.

We need not address appellant's second prong since he has no standing to raise the contentions he asserts. It is a fundamental constitutional principle that a person may not vicariously assert another's rights. *See, e.g., Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943) (vicarious assertion of anothers right to life); *Commonwealth v. Butler,* 448 Pa. 128, 291 A.2d 89 (1972) (assertion of another's Fifth Amendment privilege). This is particularly true in the case of Fourth Amendment rights, which are personal. *See Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Commonwealth v. Treftz,* 465 Pa. 614, 351 A.2d 265, *cert. denied, Treftz v. Pennsylvania,* 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976). In addition, although the

nameless parties alluded to by appellant have interests which are important and which are arguably implicated in a hypothetical search of an attorney's office, they are not before us. Therefore, these issues are not now amenable to judicial resolution. As to these hypothetical parties, there is no "case or controversy." *See, e.g., Bliss Excavating Co. v. Luzerne County,* 418 Pa. 446, 211 A.2d 532 (1965) (neither clear right nor manifest wrong shown).

■ Turning to appellant's remaining contentions, we do not find any of the considerations advanced by him to be of such magnitude as to dictate the unbounded immunity which he seeks.

There are no privileged isles beyond the reaches of a properly predicated search warrant. Anywhere and everywhere within the limits of a court's jurisdiction may be searched.

Under existing law valid warrants may be issued to search *any* property whether or not occupied by a third party, at which there is probable cause to believe that fruits, instrumentalities or evidence of a crime will be found. Nothing on the face of the [Fourth] Amendment suggests that a third party search warrant should not normally issue ...

*Zurcher,* 436 U.S. at 554, 98 S.Ct. at 1975 (emphasis in original).

[O]nce it is established that probable cause exists to believe a ... crime has been committed a warrant may issue for the search of any property which the magistrate has probable cause to believe may be the place of concealment of evidence of the crime.

*Id.* at 558, 98 S.Ct. at 1977 (citations omitted). Thus the fact that the warrant was directed at a law office is not dispositive. Not all things, however, may be seized. The confidential information given a lawyer by his client, and the lawyer's resulting work-product, whether oral, written or otherwise, have been immunized by ancient sufferance and remain time honored privileges.

Mr. Gartley seeks refuge in the attorney-client privilege. That privilege, as was recently discussed provides, that counsel shall not be competent or permitted to testify to confidential communications made to him by his client nor shall the client be compelled to disclose the same unless in either case this privilege is waived upon the trial by the client. *See* 42 Pa.C.S. § 5916; *Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327 (1986). Mr. Gartley, however, seeks to protect not what he said to his lawyer, but what he gave him to hold.

The purpose of this time-honored privilege is to protect confidential communications between the lawyer and his client, and to foster the free exchange of relevant information between them. It provides security that the information and facts revealed by the client will not be seized and used by others to his or her detriment. Its necessity obtains in the objective of promoting the most open disclosure in order to enhance the attorney's effectiveness in protecting and advancing his client's interests. *Maguigan, supra; Slater v. Rimar, Inc.*, 462 Pa. 138, 338 A.2d 584 (1975). The intended beneficiary is not the individual client so much as the systematic administration of justice which depends on frank and open client-attorney communication. *Estate of Kofsky*, 487 Pa. 473, 409 A.2d 1358 (1979); McCormick, *Evidence* § 87 (2d ed. 1972). Although it is a broad privilege it is not without its parameters, and the question of whether it is properly invoked is to be resolved on the facts of each case. *Maguigan, supra; Kofsky, supra.*[5]

This case presents no problem of confidential communication. The material sought in this case was not privileged in its own right, as Mr. Gartley concedes.[6] The warrant

5. Closely related to the attorney-client privilege is the obligation of the lawyer to preserve the confidences and secrets of his client as set forth in Canon 4 of the Code of Professional Responsibility. In addition, he is required to represent his client zealously within the bounds of the law by Canon 7 of the Code. These regulatory guides, and the rules and ethical considerations they imply, are not substantive law but serve as the guidelines for the regulation of the legal profession in this Commonwealth. *Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215 (1984).

6. Brief for Appellant at 29.

specified pre-existing tangible evidence in the form of business records. Such items are not by their nature encompassed in the attorney-client privilege. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Although the facts surrounding the conveyance of the records and the client-attorney communications incident to their transmittal, as distinguished from the records themselves, would have arguably been privileged, *see e.g., State ex rel. Sowers v. Olwell,* 64 Wash.2d 828, 394 P.2d 681, 16 A.L.R.3d 1021 (1964); the warrant in question imposed no compulsion on appellant or his attorney to divulge any of these matters. It merely required submission to a search. *See Andresen, supra.*

It is established that an attorney shall not conceal or knowingly fail to disclose that which he is bound by law to reveal. DR 7–102(A)(3); *Maguigan, supra.* Moreover, a lawyer shall not suppress evidence which he or his client has a legal obligation to reveal or produce. EC 7–27. Although appellant concedes these requirements as they relate to instrumentalities of crime or contraband, he seeks to distinguish the items sought in this case as items required by the attorney to render competent assistance. In support of this proposition he relies on *In re Ryder,* 381 F.2d 713 (4th Cir.1967); but the distinction is not tenable. *See Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Fisher, supra; Andresen, supra.* On the contrary, the majority of the cases hold that a lawyer is under a positive duty to turn over tangible evidence to the authorities. Fulfillment of that obligation violates none of the privileges cited by appellant. *See, e.g., Ryder, supra; Clutchette v. Rushen,* 770 F.2d 1469 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1474, 89 L.Ed.2d 729 (1986); *Morrell v. State,* 575 P.2d 1200 (Alaska 1978); *People v. Lee,* 3 Cal.App.3d 514, 83 Cal.Rptr. 715 (1970); *State v. Olwell, supra. See also,* 18 Pa.C.S. § 5105(a)(3) (Hindering apprehension or prosecution); § 4910(1) (Tampering with

physical evidence); Model Rules of Professional Conduct, Rule 3.4, Legal Background.[7]

Thus, we see no basis upon which to credit the assertion that the tangible evidence sought here was intended to be included within the attorney-client privilege.

With respect to appellant's other arguments, i.e., that the contemplated rifling of his file authorized by the warrant would have infringed upon the work-product doctrine and his right to effective assistance of counsel, his objections are meritless. These contentions rest on the unfounded assumption that the agents were seeking a peek into his file for some illicit purpose, an assumption not justified by the requirements for a warrant.

In considering appellant's arguments we cannot lose sight of the following facts: according to the affidavit, Mr. Gartley has admitted that the requested records do exist; Mr. Voss has admitted that he had them; and the Attorney General, prior to seeking enforcement of the warrant requested to review the records, and his request was refused. Thus, at all relevant times, Mr. Gartley and Mr. Voss had it within their power to preclude the apocalyptic spectres they now assert. This power continues to this day. We cannot and will not allow their refusal to exercise this power to stymie the Commonwealth's legitimate interest in this tangible evidence.

Accordingly, the order of the Superior Court is affirmed.

PAPADAKOS, J., concurs in the result.

7. The A.B.A. Model Rules of Professional Conduct were adopted by that organization and recommended for adoption by this Court in October 1983 by the House of Delegates of the Pennsylvania Bar Association. See 14 Pa.Bulletin 8 (Jan. 7, 1984).