J-S10039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: W.T.H., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.T.H., A MINOR | : : : : : : | |
| | : | No. 1068 MDA 2020 |

Appeal from the Order Entered July 31, 2020
In the Court of Common Pleas of Huntingdon County Juvenile Division at
No(s):  CP-31-JV-0000047-2016

| | | |
|---|---|---|
| IN THE INT. OF: W.T.H., A MINOR | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.T.H. | : : : : : : : | |
| | : | No. 1069 MDA 2020 |

Appeal from the Order Entered July 31, 2020
In the Court of Common Pleas of Huntingdon County Juvenile Division at
No(s):  CP-31-JV-0000068-2011

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED JUNE 09, 2021**

W.T.H. appeals from the order entered in the Court of Common Pleas of

Huntington County (juvenile court) ordering W.T.H. to undergo continued

involuntary commitment pursuant to provisions of the Court Ordered

_____

[*] Retired Senior Judge assigned to the Superior Court.

Involuntary Treatment of Certain Sexually Violent Persons (Act 21).[1] "[Act 21] establishes rights and procedures for the civil commitment of sexually violent delinquent children who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to the public and further provides for additional periods of commitment for involuntary treatment for said persons." 42 Pa.C.S. § 6401. 42 Pa. C.S. § 6403 sets forth the procedures to be followed for a civil commitment to be ordered. Among other things, it requires that the court find by clear and convincing evidence that the person has the disorders or behaviors calling for involuntary inpatient treatment.

W.T.H. challenges the Pennsylvania Supreme Court's holding in *In re H.R.*, 227 A.3d 316 (Pa. 2020), that Act 21 is not punitive because the time a person is committed under Act 21 should be limited, and that his attorney-client privilege has been violated because his phone calls are monitored while in treatment. We affirm.

## I.

## A.

W.T.H. has had several appeals involving his involuntary commitment. In a previous appeal in this matter, we have set the following pertinent background facts and procedural history:

---

[1] 42 Pa.C.S. §§ 6401-6409.

On June 28, 2013, the juvenile court adjudicated [fourteen-year-old W.T.H.] delinquent for involuntary deviate sexual intercourse ("IDSI") with a child and false reports to law enforcement authorities at Docket No. JV-0068-2011. The trial court later issued a dispositional and placement order, which this Court affirmed on April 29, 2014. *See In re W.T.H.*, 102 A.3d 546 (Pa.Super. 2014) (unpublished memorandum). While in placement, [W.T.H.] committed additional sexual offenses. At Docket No. JV-0047-2016, the trial court adjudicated [him] delinquent for indecent exposure, and continued [his] placement at Docket No. JV-0068-2011. On August 10, 2018, [after W.T.H. turned twenty-years-old,] the trial court adjudicated [W.T.H.] a sexually violent delinquent child ("SVDC") and committed him to one year of involuntary sexual offender treatment [at the Sexual Responsibility Treatment Program (SRTP) at Torrance State Hospital] for one year per Act 21. …

(*Interest of W.T.H.*, 237 A.3d 474, at *1 (Pa. Super. filed May 22, 2020) (unpublished memorandum), *appeal denied,* 241 A.3d 336 (Pa. 2020)).

In an August 10, 2018 commitment, W.T.H. argued that Act 21 was punitive and that allowing commitment based on the clear and convincing evidence standard rather than beyond a reasonable doubt made its commitment procedures unconstitutional. (*See Interest of W.T.H.*, 239 A.3d 91, at *3 (Pa. Super. filed July 23, 2020) (unpublished memorandum)). In affirming the juvenile court, this Court relied on the Pennsylvania Supreme Court's decision in *In re H.R.*, 227 A.3d 316 (Pa. 2020), noting that it:

applied the *Mendoza-Martinez*[2] factors to Act 21 in order to determine if it was punitive in intent or effect. [*See In re H.R.*,

---

[2] In considering whether a statute is penal in effect, the Court considers the *Mendoza-Martinez* factors, which are:

*(Footnote Continued Next Page)*

*supra*] at 331-35. Ultimately, the Court found that only the first factor weighed in favor of deeming Act 21 punitive. *Id.* All other factors balanced in favor of finding the statute non-punitive. *Id.* The High Court explained the reasoning behind its decision as follows:

> Despite the fact that Act 21 imposes obvious affirmative disabilities or restraints upon SVDCs, our review of the remaining *Mendoza-Martinez* factors leads to the conclusion [that] the statutory scheme is not punitive in intent or effect. Act 21 provides treatment to SVDCs rather than imposing restrictions that were historically considered punishment, and does not promote the typically punitive goals of deterrence and retribution. Furthermore, Act 21 protects the public from SVDCs, who have never been convicted of a crime, but are subject to the statutory restrictions because they are dangerously mentally ill. Lastly, Act 21, including the 2011 amendments, cannot be said to be excessive in light of the danger posed to the public by SVDCs. Based on all of the above, we conclude that Act 21 does not constitute criminal punishment.

*Id.* at 335. Next, the Court reasoned that because the challenged provisions of Act 21 do not constitute criminal punishment, Appellant's due process claim surrounding the burden of proof employed at SVDC hearings failed. *Id.* Thus, the statute's application of a clear and convincing evidentiary standard for imposing its requirements passes constitutional muster.

---

Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963).

An *en banc* panel subsequently applied the holding of **H.R.**[]. ***See In re J.C.***, [232 A.3d 886] (Pa.Super. 2020) (*en banc*). In doing so, we relied upon the analysis of **H.R.**[] that the requirements of Act 21 are not punishment, and that the mechanism of adjudicating SVDCs by a clear and convincing evidence standard does not run afoul of the constitution. ***Id.***

Here, as in **H.R.**[] and ***In re J.C.***, Appellant challenges the validity of his SVDC status on the constitutional grounds that Act 21's requirements constitute punishment necessitating that all relevant factual findings are made beyond a reasonable doubt. In light of the foregoing precedent, we disagree. Our Supreme Court has spoken on this issue and its holding is inapposite to Appellant's position. Appellant has not offered any additional analysis to persuade us otherwise. Therefore, Appellant's constitutional challenges to Act 21 are meritless. As our Supreme Court previously explained in **H.R.**[], Act 21 is not punitive. Therefore, application of the statute does not violate Appellant's constitutional protections.

(***Id.*** at \*\*4-5) (record citation omitted).

## B.

On September 5, 2019, the juvenile court conducted an Act 21 review hearing.[3] That same day, the court continued W.T.H.'s Act 21 placement for an additional year at both docket numbers. On appeal, W.T.H. challenged the validity of his continued SVDC status and the constitutionality of Act 21. In

---

[3] Section 6404 of Act 21 provides that the court shall hold a review hearing after a person's initial one-year period of confinement and, "[i]f the court determines by clear and convincing evidence that the person continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, the court shall order an additional period of involuntary inpatient treatment of one year[.]" 42 Pa.C.S. § 6404(a), (b)(2).

affirming, we relied on in **In re H.R.**, concluding that, because "Act 21's provisions do not amount to criminal punishment [its] mechanism of adjudicating SVDCs by a clear and convincing evidence standard is constitutionally sound." (**Interest of W.T.H.**, 237 A.3d at *1);[4] **see also In re H.R.**, **supra** at 335.

## C.

Regarding this appeal, on July 31, 2020, another Act 21 review hearing was held. At the hearing, counsel agreed that the Commonwealth witnesses, Robert M. Stein, Ph.D. of the Sexual Offender Assessment Board (SOAB) and Melissa R. Nossal, Psy.D., clinical director of the SRTP at Torrance State Hospital, were qualified experts and that each of their reports would be received into evidence instead of having them testify on direct examination. Both witnesses were cross-examined and W.T.H. concedes that he meets all standards under Act 21 for continuation of his treatment making recitation of the evidence supporting his Act 21 commitment unnecessary. (**See** W.T.H.'s Brief, at 11). However, prior to the hearing, W.T.H. engaged in conduct that resulted in him being demoted from treatment level 2-2 to 2-1, the level

---

[4] The procedural history as it relates to the order in which our decisions were filed is a bit confusing. Although W.T.H.'s appeal of the initial August 20, 2018 adjudication necessarily was filed before his appeal of the September 5, 2019 continuation order, this Court's decision affirming the 2018 order was filed approximately two months after our decision affirming the 2019 disposition. However, this has no practical effect; both decisions found **In re H.R.** dispositive of W.T.H.'s claim that Act 21 is punitive.

assigned at entry into the program. According to Dr. Nossal, it is standard procedure for all phone calls to be monitored at these levels. (**See** N.T. Hearing, 7/31/20, at 27). However, she explained that private phone calls could be arranged through W.T.H.'s social worker. (**See id.**).

At the conclusion of the hearing, the court issued an order continuing W.T.H.'s Act 21 placement for another year at docket numbers CP-31-JV-68-2011 and CP-31-JV-47-2016. W.T.H. timely appealed.[5] He and the court have complied with Rule 1925. **See** Pa.R.A.P. 1925.

## II.

On appeal, W.T.H. maintains that, although **In re H.R.** is the leading decision on the constitutionality of Act 21, it "should be rejected and/or disregarded" due to its reliance on facts in the *amicus curiae* briefs of the Pennsylvania Department of Human Services (DHS) in violation of the United States Supreme Court's subsequent holding in **U.S. v. Sineneng-Smith**, 140 S.Ct. 1575 (2020), and that, instead, Act 21 should be declared to be punitive. (W.T.H.'s Brief, at 5); (**see id.** at 13, 19-22). He also claims that even if Act 21 is not punishment, the term of commitment under Act 21 should have a time limit, and that proceeding through the criminal rather than juvenile court would have had a more favorable result. (**See id.** at 25-28). Finally, he

---

[5] W.T.H. appealed at both docket numbers and this Court consolidated the appeals *sua sponte* on September 14, 2020.

argues that he was denied the right to counsel while committed to the SRTP because his phone calls were monitored and this violates his attorney-client privilege and renders Act 21 punitive.  (*See id.* at 29-33).[6]

**A.**

We first note that as observed in the decisions of this Court affirming the juvenile court's prior Act 21 adjudications in this matter, *In re H.R.'s* holding that Act 21 is not punitive is binding precedent.  (*See Interest of W.T.H.*, 239 A.3d at *5); (*Interest of W.T.H.*, 237 A.3d at *1); *see also Commonwealth v. Reid*, 235 A.3d 1124, 1159 (Pa. 2020) ("It is elementary that unless the United States Supreme Court reverses a decision of [the Pennsylvania Supreme] Court, or th[at] Court overrules its own prior decision, the law emanating from the decision remains law.") (internal quotation marks and citation omitted).

W.T.H. argues, however, that *In re H.R.* "conflicts to the core" (W.T.H.'s Brief, at 19), with the United States Supreme Court's subsequent May 7, 2020 decision in *Sineneng-Smith* because *In re H.R.* considered an *amicus curiae* brief in reaching its holding and that somehow means that we are not bound by it.

---

[6] Because these issues raise questions of law, "our standard of review is *de novo* and our scope of review is plenary."  *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (citation omitted).

In ***Sineneng-Smith***, the appellant continuously made the same argument at both the appellate and trial courts. However, "[w]ith the appeal poised for decision based upon the parties' presentations," the Ninth Circuit ordered briefing from three organizations of its choosing to address three new issues of its own creation. At argument, it then allowed *amicus* counsel 20 minutes to argue and appellant's counsel only 10. In finding against the appellant, the appellate court relied on one of the arguments it had directed *amicus* counsel to address. ***See id.*** at 1580-81. The United States Supreme Court observed that:

> [I]n both civil and criminal cases, in the first instance and on appeal ..., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. … [A]s a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.

***Sineneng-Smith***, ***supra*** at 1579 (quotation marks and citations omitted); (***see also*** W.T.H.'s Brief, at 19-20). It reversed, finding that the Ninth Circuit's "takeover of the appeal" was not justified. ***Id.*** at 1581.

W.T.H. contends that because in ***In re H.R***, our Supreme Court cited in a footnote statistics concerning the program, including the number of participants and how residents are housed at the facility, contained in a DHS

*amicus curiae* brief,[7] we can somehow reject ***In re H.R.'s*** holding.  However, even if what occurred in ***Sineneng-Smith*** had occurred in ***In re H.R***, that would not in any way affect ***In re H.R.'s*** binding effect on this case. ***Sineneng-Smith's*** challenge to the Ninth Circuit "takeover of the appeal" was in a direct appeal, while W.T.H. is making an impermissible collateral attack on ***In re H.R.*** based on something that allegedly occurred in the case. Any procedural infirmity that was extant in ***In re H.R.***, including one like in

_____

[7] DHS operates the SRTP for SVDCs at Torrance State Hospital.  Pennsylvania Rule of Appellate Procedure 531, Participation by *Amicus Curiae*, provides , in relevant part:

> **(a) General.**—An amicus curiae is a non-party interested in the questions involved in any matter pending in an appellate court.
>
> **(b) Briefs**
>
> (1) *Amicus curiae Briefs Authorized*.—An *amicus curiae* may file a brief (i) during merits briefing; (ii) in support of or against a petition for allowance of appeal, if the *amicus curiae* participated in the underlying proceeding as to which the petition for allowance of appeal seeks review; or (iii) by leave of court.  An *amicus curiae* does not need to support the position of any party in its brief.
>
> (2) *Content*.—An *amicus curiae* brief must contain a statement of the interest of *amicus curiae*.  The statement of interest shall disclose the identity of any person or entity other than the *amicus curiae*, its members, or counsel who (i) paid in whole or in part for the preparation of the *amicus curiae* brief or (ii) authored in whole or in part the *amicus curiae* brief.

Pa.R.A.P. 531.

***Sineneng-Smith***, must have been raised on direct appeal by a party in ***In re H.R.*** If not, the holding remains unless later reversed.

**B.**

W.T.H. argues alternatively that even if Act 21 is not punishment, the total length of commitment must be limited because, arguably, he could remain in confinement for his entire life, which has been held to be unconstitutional in the criminal context. He posits that the criminal statutes under which he was adjudicated delinquent have maximum penalties that limit the amount of time he can be incarcerated, and if he had elected to proceed in criminal court, he would have faced a shorter term than he faces pursuant to Act 21. The Commonwealth responds that W.T.H. "is confusing the purposes to be served by the criminal justice system-which seeks to deter and punish criminal behavior-and his mental health commitment under Act 21- whose purpose is to treat his mental health abnormality and personality disorder while protecting the public." (***See*** Commonwealth's Brief, at 8-9).

First, we observe that whether W.T.H. would have faced lesser consequences in criminal court is speculative. The fact is he was tried in juvenile court, and his argument presumes he would have been eligible for criminal prosecution as a juvenile and that he would have served a criminal sentence. Implicit in that argument is that after he had served his sentence, he would not then be committed to a treatment facility. We decline to address this speculative claim. ***See In re Cain***, 590 A.2d 291, 292 (Pa. 1991) ("It is

a well-established principle of law that this Court will not decide moot questions.").[8]

As for whether Act 21 is unconstitutional on its face because it could result in an individual spending a lifetime in treatment, this appears to merely be an argument that Act 21 is excessive, which *In re H.R.* necessarily considered in reaching its holding. As noted by our Supreme Court, "Act 21 provides for an annual review to determine whether inpatient SVDCs should be moved to outpatient treatment" and its "restrictions are not excessive in relation to the statute's primary purposes of protecting the public and providing treatment to SVDCs[.]" *In re H.R.*, *supra* at 335. Because we are bound by this conclusion that Act 21's treatment term is not excessive, we decline W.T.H.'s invitation to impose limits on how long an individual can spend in treatment to satisfy Act 21's purpose.

---

[8] Moreover, we note briefly that W.T.H. relies on criminal law to support his argument, but this ignores the fact that the purpose of Act 21 is non-punitive and, unlike the Crimes Code, it "does not apply to conduct, but to an SVDC's status 'as having a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence[.]' 42 Pa.C.S. § 6403(d)." *In re H.R.*, *supra* at 334. In other words, the length of time spent in treatment is not a statutorily prescribed term of punishment for an individual's prohibited conduct, but the duration required to treat his mental abnormality or personality disorder; cases deciding what constitutes an unconstitutional term of criminal imprisonment are not persuasive.

**C.**

Finally, W.T.H. maintains that SRTP's policy to monitor all individual's phone calls violates his attorney-client privilege. (**See** W.T.H.'s Brief, at 29-32).

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Grounded in the interest and administration of justice, the privilege recognizes the necessity of confidential pursuits of legal assistance free from the consequences or the apprehension of disclosure." **In re Estate of McAleer**, ___ A.3d ___, 2021 WL 1289675, at *6 (Pa. filed Apr. 7, 2021) (citation and internal quotation marks omitted). The purpose of this time-honored privilege is to protect confidential communications between the lawyer and his client and to foster the free exchange of relevant information between them. It provides security that the information and facts revealed by the client will not be seized and used by others to his or her detriment. **In re Search Warrant B-21778**, 521 A.2d 422, 428 (Pa. 1987) (citation omitted).

At the July 31, 2020 Act 21 continuation hearing, Dr. Nossal testified that it was standard procedure to monitor all telephone calls by individuals such as W.T.H. at the 2-1 and 2-2 levels of commitment. However, she explained that private phone calls can be arranged through W.T.H.'s social worker. Although W.T.H.'s counsel now baldly claims that this is not true, (**see** W.T.H.'s Brief, at 31 n.7), W.T.H. fails to point to any evidence he

presented to this effect at the hearing and, even had he done so, it was for the court to consider witness credibility and weigh the evidence. *__See In re W.M.__*, 41 A.3d 618, 622 (Pa. Super. 2012).

Based on our review of the record, the hearing evidence established that W.T.H. can arrange for confidential phone calls, including with his counsel. Thus, his claim that his right of attorney-client privilege is violated by SRTP's telephone monitoring procedure fails.[9]

For all the foregoing reasons, we affirm the juvenile court's July 31, 2020 adjudication order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/9/2021

---

[9] Moreover, to the extent that W.H.P. argues that SRTP's monitoring of phone calls results in Act 21 being punitive, we again remind him that we are bound by *__In re H.R.'s__* holding.