Commonwealth *v.* Crafton, Appellant.

Submitted November 25, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James H. Joseph*, and *Joseph & Hershman*, for appellant.

*Louis R. Paulick* and *Robert L. Eberhardt*, Assistant District Attorneys, and *John J. Hickton*, District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P.J., April 22, 1976:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Allegheny County, sitting without a jury, which found appellant guilty of theft by

failure to make required disposition of funds received. See §3927 of the new Crimes Code (18 Pa.C.S. §3927). At trial appellant demurred and when the demurrer was overruled, rested her case without offering any evidence.

Appellant, Sue B. Crafton, operated a travel agency in Pittsburgh. Early in 1973, appellant was in contact with Ellen Milne (a co-defendant below, who was acquitted) to organize a trip to Las Vegas. Mrs. Milne would accept reservations and deposits from individuals for the trip. For this she received a small commission. The appellant was to arrange the trip which was to take place October 21 to 25, 1973. Mrs. Milne ultimately secured 252 participants (almost twice the number originally planned). "All but a few" paid and Milne turned approximately $56,000.00 over to appellant.

On her part, appellant, who was a travel retailer and did not package group tours herself, contacted a travel wholesaler, Fun Tyme Groups and Charters of New York, to make the arrangements. Fun Tyme agreed to put together the package at a cost of $50,800.00 and appellant ultimately paid a total deposit of $12,000.00 to Fun Tyme for the trip. Unknown to appellant, Fun Tyme did not make the reservations themselves but contacted another wholesaler, Carefree Travel, who it appears actually did make the arrangements. Appellant was to remit the balance due, some $39,000.00 to Fun Tyme 30 days before departure. Appellant did not do so but wrote that she would settle on October 10th when she returned from another trip. The events from October 10th until the 21st are confused. The notes of testimony indicate that appellant was quite concerned because she never knew the name of the airline that was to fly the group to Las Vegas nor was she able to confirm with the hotel that the group had reservations. It appears that even two days before the trip, appellant was still unaware of this information. A representative of Fun Tyme, one Pat Trozzo, testified that such reservations were made but he was unable to recall the details. Appellant did send Fun

Tyme a check for $20,000.00 (of the $39,000.00 outstanding) but the check was drawn against insufficient funds. Mr. Trozzo had checked with his bank and knew of the unavailability of funds although the check was not formally dishonored until October 22, 1973. From the 18th to the 20th appellant frantically struggled to raise $24,000.00, the difference between her cash assets of $15,000.00 and her $39,000.00 balance due Fun Tyme. Many calls were made to Fun Tyme about payment, some from appellant's bank. Wire transfers, cash payments to an agent and Western Union telegraph payments were discussed. All attempts to raise the needed money failed and Fun Tyme cancelled the trip at the close of business on October 19th for nonpayment although it appears that the arrangements could still have been revived on Saturday, October 21st, if payment was forthcoming. From the evidence, two things are clear: 1) appellant was short $24,000.00 to pay the wholesaler on the date required although she had received payment in full from the participants. 2) appellant attempted to raise the money to pay Fun Tyme. After the cancellation, appellant circulated the story that the plane had crashed but gradually the truth emerged. One hundred fifty of the participants did receive refunds or were offered alternative trips. However, the ten complaining witnesses received neither and filed charges under 18 Pa.C.S. §3927 "theft by failure to make required disposition of funds received". As of the date of the trial, Fun Tyme's attorney was holding at least $7,000.00 (the $12,000.00 deposit less a $5,000.00 cancellation fee) pending disposition of civil actions against appellant. Some time after the trip was cancelled, appellant filed for bankruptcy.

Appellant raises four specific issues:

The first is with regard to some bank microfilm which appellant contends were improperly admitted at trial. While appellant did object to their admission the issue was not raised in post-trial motions, therefore it is

considered waived. *Commonwealth v. Blair*, 460 Pa. 31, 33, 331 A.2d 213, 214 (1975).

The other three assignments of error deal with the sufficiency of the evidence.

Section 3927 "theft by failure to make required disposition of funds received" provides in relevant part:

"(a) *Offense defined.* - A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition."

An additional section deals with presumptions in regard to government or bank officers which is not relevant here.

This section, new to Pennsylvania criminal law, was taken from the final draft of the Model Penal Code. It was designed to replace the fraudulent conversion section of the old Penal Code (Jarvis, Pa. Crimes Code and Criminal Law, §3927). This is a case of first impression in the Commonwealth.

Both sides concede that the crime has four elements:

1. The obtaining of property of another;
2. Subject to an agreement or known legal obligation upon the recipient to make specified payments or other disposition thereof;
3. Intentional dealing with the property obtained as the defendant's own; and
4. Failure of the defendant to make the required disposition of the property.

Appellant admits that the first and third elements are present: 1) that she received the money and, 2) that she treated it as her own.

As to the second element "taking subject to a legal duty" appellant argues that this element is not proven because no definite duty was shown at trial. The comments to the original of this section in the Model Penal Code T.D. show that it was not the intent of this section to put the force of criminal law behind a transaction which is in fact a credit transaction but rather to impose liability where the obligation was to reserve an amount of assets for the performance of the obligation. However, the specific sentence which the comment feels limits the effect of the statute is absent from the final draft. (Comment to §206.41 Model Penal Code T.D. No. 2, p. 80).

The testimony at trial showed that the participants in the trip did not expect appellant to provide services herself, but, rather, expected her to make arrangements with others although they did not know with whom. Appellant's counsel brought this out several times on cross-examination. Appellant argues that this proves appellant did not take the money subject to a duty to disburse. We think the evidence shows the opposite, that the appellant took the money knowing that she would have to disburse the funds to others. Appellant conceded at trial that the element was present and we so find.

It is the fourth element - failure to make the required disposition which is the key element in determining if appellant committed the alleged crime by failure to make the proper disposition.

In this regard appellant makes two arguments: 1) that this element was not proven or, 2) it was not proven by an acceptable method. Appellant argues that because it was not shown either that the specific monies contributed by the complaining witnesses were not forwarded to Fun Tyme or that the monies which remained with Fun Tyme were not that of the complaining witnesses, no failure to disburse was shown.

Taking the evidence in a light most favorable to the

Commonwealth which is the standard on appellate review, the Commonwealth proved that the complaining witnesses paid money to appellant and received nothing in return, and that on the due date appellant was at least $24,000.00 short of the amount of money necessary to begin the trip although she had been paid in full by the participants. *Commonwealth v. Lee*, 450 Pa. 152, 299 A.2d 640 (1973).

Section 3927, 18 Pa.C.S., provides in its last sentence of the first paragraph, supra, that it is not necessary to identify specific funds to show the failure to disburse. The Commonwealth proved that appellant was unable to meet more than fifty percent of the payment. This, taken with the other evidence, is sufficient to show that all elements of the crime were present. *Commonwealth v. Petrisko*, 442 Pa. 575, 275 A.2d 46 (1971).

The last sentence of §3927 (a) provides what we feel is the crucial time under this section: "[a]t the time of the failure of the actor to make the required payment or disposition." Appellant did nothing criminal until she failed to pay Fun Tyme the balance due. It is at this moment that criminal liability attached although it could have been negated by returning the money to the complaining witnesses. This statute does not make insolvency a crime as appellant contends. It merely provides that when money is paid to an agent for an obligation that obligation must be met. In this regard the act lessens the duties of an agent by permitting him to commingle funds, if he chooses, without penalty. It is only when the required payments are not made that criminal liability attaches.

Appellant also argues that merely showing the gross amount appellant was short ($24,000.00) is an impermissible and insufficient way to show failure to disburse. This is the so-called "net shortage" test. Appellant argues, as above, that the Commonwealth had to show that the specific monies were not disbursed. We think that the statute specifically permits the use of this type

of proof. This is a recognition of the difficulty in showing the route of specific monies through a commercial checking account. As we noted above, criminal liability did not attach until appellant failed to make the payment. We feel that the Commonwealth offered proof in a manner permitted by the statute and in the only practical way. Appellant also objects to some presumptions in the statute which she contends were made in this case. The statute specifically limits these presumptions to bank employees and government officers and the court below stated both at trial and in its opinion that it was not making any of these presumptions.

Finally, appellant argues generally that the effect of a guilty verdict in this case is to hold criminal a business venture that was unsuccessful. We do not agree. As we have discussed above, all elements of the crime are present. The appellant could have avoided criminal liability by any of the elements being absent. The most obvious is that she could have kept the money for this trip in a separate escrow account. This is a common practice among travel agencies and government regulations in fact now require that this be done in this type of travel.[1] It was only when she treated the money as her own *and* failed to make the disposition that appellant violated the law.

Judgment of sentence affirmed.

---

1. Civil Aeronautics Board Special Regulations part 387A .31 (i), effective September 13, 1975.