42

584 A.2d 882

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James Joel TURRELL, Appellee.**

Supreme Court of Pennsylvania.

Argued April 3, 1990.

Decided Dec. 26, 1990.

44

Jane Roach, Sp. Prosecutor, for appellant.

Samuel C. Stretton, West Chester, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal, by allowance, from a memorandum opinion and order of the Superior Court which affirmed an order of the Court of Common Pleas of Wyoming County dismissing criminal charges which had been lodged against James Joel Turrell, the appellee herein 391 Pa.Super. 642, 563 A.2d 195. The charges consisted of three counts of "theft by failure to make required disposition of funds received," 18 Pa.C.S. § 3927(a), and arose from Turrell's misuse of funds from an escrow account while he was engaged in the practice of law. At issue is whether prima facie cases were established upon these charges and whether criminal liability was negated by the fact that Turrell returned to the escrow account all of the funds that he had misappropriated and eventually delivered the escrowed funds to the persons entitled thereto. The facts established at the preliminary hearing, on the three counts of theft, are as follows.

### Count # 88-163

On October 10, 1985, Turrell received from BancAmerica Credit Corporation (BACC) the sum of $7,000, which, BACC specified, was to be held in an interest-bearing escrow account "until such time as BACC and [one of Turrell's clients] mutually agree to its disposition or until such time as the rights of BACC and [the client] are determined by a

final court judgment." BACC also specified that Turrell's client should commence a legal action against BACC within 60 days to determine rights to the escrowed funds, and, further, that if no such action were commenced, the funds were to be returned. On December 12, 1985, inasmuch as no action had been filed, BACC demanded an immediate return of the funds. This demand was repeated a number of times in the ensuing months. During this period there were numerous occasions when Turrell's escrow account was overdrawn and when funds in the account were far below the level needed to cover the $7,000 in question. Turrell had used the $7,000 received from BACC to pay his own federal income taxes. Turrell belatedly returned the funds to BACC, with interest, on October 16, 1986.

## Count # 88–164

This count relates to the fact that the funds which Turrell belatedly returned to BACC, supra, were not his own funds but rather were those of one of Turrell's clients, Mark Carter. On October 15, 1986, Carter had his bank deliver to Turrell the sum of $7,912 which was to be transmitted to a third party to settle a claim against Carter. There was no discussion or agreement between Turrell and Carter regarding the manner in which the funds were to be kept pending their transfer to the third party, or as to the speed with which that transfer was to be made. Upon receipt of the $7,912, Turrell transferred nearly $7,300 of this sum to BACC. Approximately one month later, Turrell obtained a bank loan to replenish his escrow account. It is undisputed that, until the loan was obtained, there were insufficient funds in the escrow account to cover the $7,912. On November 28, 1986, Turrell delivered to the third party a check in the amount of $7,912 as settlement for the claim in question.

## Count # 88–165

This count pertains to Turrell's handling of money entrusted to him during the administration of an estate. On

approximately April 10, 1986, Turrell received $3,000 at a real estate closing when an estate which he represented sold certain real property. This sum, tendered by the purchaser, was subject to a written "Escrow Agreement," signed by Turrell, providing that "the sum of $3,000 would be withheld from the closing proceeds and placed in escrow by J. Joel Turrell as Escrow Agent for the parties for the purpose of paying the inheritance taxes as soon as said taxes can be computed and a return filed." As of July 18, 1988, the date of the preliminary hearing in this case, Turrell had not filed an inheritance tax return or paid the taxes. Turrell claims that various actions of the estate's executors and beneficiaries hindered him from filing the tax return. On the date of the preliminary hearing there were sufficient funds in the escrow account to pay the taxes, and Turrell asserts that the taxes were subsequently paid. It is undisputed, however, that between April 10, 1986 and April 14, 1988, the period covered by this count, there were numerous occasions when Turrell's escrow account was overdrawn or had a balance substantially below $3,000.

The question presented in this appeal is whether the courts below properly dismissed the charges heretofore described. A review of Turrell's actions from the standpoint of professional ethics is not presently at issue. That Turrell's actions fell below the standards set forth in the Disciplinary Rules governing members of the bar of this Court is not questioned. In August of 1988, by order of this Court, Turrell was disbarred by consent. This appeal concerns, therefore, only the question of whether the Commonwealth has established a prima facie case on each of the charges presented.

■ The crime of theft by failure to make required disposition of funds received, as set forth in 18 Pa.C.S. § 3927(a),[1] has four elements:

---

1. Section 3927 of the Crimes Code, 18 Pa.C.S. § 3927, provides in pertinent part:

 **§ 3927. Theft by failure to make required disposition of funds received**

"1. The obtaining of property of another;

2. Subject to an agreement or known legal obligation upon the recip[ient] to make specified payments or other disposition thereof;

3. Intentional dealing with the property obtained as the defendant's own; and

4. Failure of the defendant to make the required disposition of the property."

*Commonwealth v. Ohle*, 503 Pa. 566, 581, 470 A.2d 61, 69 (1983) (quoting *Commonwealth v. Crafton*, 240 Pa.Super. 12, 16, 367 A.2d 1092, 1094–95 (1976)).

On count # 88–163, wherein Turrell accepted funds from BACC upon the express stipulation that they be held in an escrow account, and then used the funds to pay his own income taxes, it is beyond question that Turrell obtained the property of another (element 1) and dealt with it as his own (element 3). A legal obligation to hold the funds in an escrow account (element 2) was plainly present, for the funds were accepted upon BACC's express stipulation that they be held in escrow. As to whether there was a failure to make the required disposition (element 4), Turrell argues that inasmuch as funds were belatedly delivered to the one entitled thereto, i.e., BACC, that the required disposition was adequately made. In essence, Turrell's contention is that the required distribution ("required payment or disposition," 18 Pa.C.S. § 3927(a), supra at footnote 1) consists only of the ultimate and final distribution. We do not agree. In any given case, the required disposition may consist of one or more parts. There were clearly two components to the required disposition in the present case:

(a) Offense defined.—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

1.) holding the funds in escrow, and, 2.) delivering them from escrow as required. Holding the funds in escrow was not a mere option; rather, it was plainly and expressly required. Thus, it cannot be said that the first component was satisfied, even if the second was eventually met.

The same reasoning applies to count # 88–165, wherein Turrell accepted funds from a purchaser of real estate upon an express agreement that the funds would be held in escrow to pay certain inheritance taxes. Turrell plainly obtained the funds of another (element 1), and, by misappropriating them, dealt with them as his own (element 3). An agreement had been signed by Turrell obligating him to perform two actions: 1.) hold the funds in escrow, and, 2.) pay the inheritance taxes. Thus, there were two components to the required disposition (element 2). The first component of the required disposition, holding the funds in escrow, was plainly not met. This conclusion is not altered by the fact that Turrell may ultimately have secured payment of the taxes.

We conclude, therefore, that prima facie cases have been established with respect to counts # 88–163 and # 88–165. The facts surrounding count # 88–164, however, require a somewhat different analysis insofar as the escrow issue is concerned.

 In count # 88–164, Turrell accepted funds from a client (element 1) to be transmitted to a designated third party but instead transferred the funds to BACC to cover his earlier misappropriation of BACC's funds (element 3). Clearly, Turrell had an obligation to deliver the funds to the designated third party (element 2). The question arises, however, as to whether Turrell had an additional legal obligation to hold the funds in escrow pending their delivery to the third party. This question is pivotal, for, unless there existed such an obligation, a prima facie case on this count cannot be sustained. Turrell did, approximately five weeks after receiving the funds from his client, deliver to the third party the requisite sum. There had been no discussion between the client and Turrell regarding how

quickly this delivery was to be made. Given that the delivery was made, without apparent adverse consequences to Turrell's client, we do not find that a delay of five weeks in itself provides a sufficient basis for finding that there was a failure to make the required disposition (element 4).

We turn, therefore, to the question of whether there was an additional component to the required disposition, to wit, whether Turrell was obliged to have held the funds in escrow pending their disbursement to the third party. It is undisputed that there had been no discussion or agreement between Turrell and his client about the manner in which the funds were to be held. The Commonwealth alleges that an obligation to escrow nevertheless arose under the Code of Professional Responsibility which governed the conduct of members of the bar at the time Turrell performed the actions from which the present charges arose.[2] The Code of Professional Responsibility plainly mandated that commingling of the funds of clients with those of lawyers be avoided, and that clients' funds be held in identifiable bank accounts commonly known as client fund trust accounts. EC 9–5; DR 9–102. Without question, Turrell violated these requirements. As noted supra, discipline has been imposed in the form of disbarment by consent. The present issue is not, however, whether Turrell breached the requirements of professional responsibility, but rather whether he breached a "legal obligation" (element 2) to hold funds in escrow.

This Court has previously considered the scope of the Code of Professional Responsibility, and it is by now well established that the Code "does not have the force of substantive law." *Estate of Pedrick*, 505 Pa. 530, 535, 482 A.2d 215, 217 (1984). Accord *In re Search Warrant B–21778*, 513 Pa. 429, 441 n. 5, 521 A.2d 422, 428 n. 5 (1987); *Reilly v. SEPTA*, 507 Pa. 204, 219, 489 A.2d 1291, 1298

---

2. By order of this Court dated October 16, 1987, the Code of Professional Responsibility was replaced by Rules of Professional Conduct which are applicable to professional misconduct occurring after March 31, 1988.

50

(1985). In *Estate of Pedrick*, supra, we quoted the following language from the preamble of the Rules of Professional Conduct, subsequently adopted by this Court, see footnote 2 supra, as a proper indication of the scope of application to be afforded the Code of Professional Responsibility: "[N]othing in the Rules should be deemed to argument [sic] [augment] any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such [a] duty." 505 Pa. at 543, 482 A.2d at 221–22. Accordingly, insofar as Turrell's failure to hold a client's funds in escrow, and his consequent breach of the Code of Professional Responsibility, it cannot be said that there has been a breach of a substantive "legal obligation" for which a prosecution can be maintained under 18 Pa.C.S. § 3927(a). Count # 88–164 must, therefore, be dismissed.

Thus, commingling of funds, although ethically reprehensible, does not in and of itself constitute a criminal violation of § 3927(a) of the Crimes Code. Instead, a criminal violation occurs when an attorney evinces an intent not to make the required payment or disposition. Until such time as payment is due, an attorney cannot be considered in violation of § 3927(a), although he very well may have violated the Rules of Professional Conduct. However, assuming all the other elements have been satisfied, once payment is required and an attorney fails to make such payment, then a violation of § 3927(a) has occurred.

The final issue to be addressed is whether certain language found in the Superior Court's decision in *Commonwealth v. Crafton*, supra, bars prosecution upon the counts for which prima facie cases have been established, namely, counts # 88–163 and # 88–165. This Court has repeatedly cited *Crafton* as setting forth a proper statement of the elements of the crime at issue, theft by failure to make required disposition of funds received. *Commonwealth v. Van Nest*, 517 Pa. 44, 50, 534 A.2d 473, 476 (1987); *Commonwealth v. Ohle*, 503 Pa. at 581, 470 A.2d at 69. Certain language found in *Crafton* is now relied upon by Turrell in an effort to avoid criminal responsibility.

The *Crafton* case involved a travel agent who had accepted money from a number of individuals who wanted to take a group tour. The agent was supposed to deliver the money to a travel wholesaler known as Fun Tyme. Only a portion of this money was ever delivered to Fun Tyme; hence, Fun Tyme cancelled the tour. Some of the individuals received refunds, but others did not. The latter group became complaining witnesses charging the travel agent with theft by failure to make required disposition of funds received. The travel agent was convicted upon this charge, and the Superior Court affirmed the conviction. In affirming, the Superior Court set forth a statement of the elements of this theft offense, and, as heretofore noted, that statement has been repeatedly cited with approval by this Court. Other language in the *Crafton* decision, now relied upon by Turrell in support of an argument that by repaying funds which he had misappropriated from his escrow account he negated criminal liability, has never been cited or addressed by this Court. That language is as follows:

> Appellant did nothing criminal until she failed to pay Fun Tyme the balance due. It is at this moment that criminal liability attached although it *could have been negated by returning the money to the complaining witnesses.*

240 Pa.Super. at 18, 367 A.2d at 1095 (emphasis added).

We agree that criminal liability attaches as soon as the failure to make a required distribution of funds occurs, but reject the view that liability can be negated through a return of the misappropriated funds. The crime is complete when all of its elements have been fulfilled, and, once completed, it cannot be undone. Certainly, where an offender has made restitution, and particularly where restitution has been made before the filing of criminal charges, this can be considered by a sentencing court as a significant factor in mitigation of the punishment to be imposed. Restitution does not, however, negate the fact that a crime has been committed.

The language in *Crafton* indicating that criminal liability could be avoided through the return of misappropriated

funds was mere dictum. The defendant in that case had not returned funds to the complaining witnesses, but rather returned funds to other individuals who consequently chose not to become complaining witnesses. Thus, the Superior Court was not presented with a factual situation where there had been a return of funds to complaining witnesses, and it was not jurisprudentially appropriate for it to engage in speculation as to what the holding would be in a case where a return of funds had in fact occurred.

Turrell further claims that, regardless of whether the language upon which he relies in *Crafton* is regarded as dictum, he is entitled as a matter of due process to have it applied in this case. It is a well-recognized principle of due process that criminal statutes must give fair warning of the conduct which they prohibit. See *Commonwealth v. De Francesco*, 481 Pa. 595, 606–08, 393 A.2d 321, 327 (1978). Turrell reasons, therefore, that he is entitled to have the criminality of his conduct determined in accordance with whatever judicial interpretations of the statute were in effect at the time of his conduct. As stated in *Bouie v. Columbia*, 378 U.S. 347, 354–55, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894, 900 (1964), retroactive judicial interpretations of criminal statutes can indeed present due process problems:

> When a similarly *unforeseeable* state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime.

(Emphasis added).

Our holding in the present case, however, cannot be regarded as an *unforeseeable* construction of a criminal statute. Rather, it constitutes a straightforward application of the plain language set forth in the statute. See *Commonwealth v. Pope*, 455 Pa. 384, 389 n. 9, 317 A.2d 887, 889–90 n. 9 (1974). Nowhere in the statute is there any language suggesting that restitution negates criminal liabil-

ity. Further, our holding, declining to recognize and give efficacy to the dictum in *Crafton,* does not constitute a rejection of what was announced by the *holding* in that case. Turrell had no right to rely upon pure dictum in a Superior Court decision, and his due process rights are not violated when we choose not to adopt that dictum as law.

When one undertakes to hold funds in escrow, one assumes a duty of trust, committed to preserving the identity of funds and keeping them safe and apart from one's own funds. Turrell, by accepting funds that were to be placed in escrow, became obliged to make a proper disposition of the funds. Failure to do so provided a basis for prosecution under 18 Pa.C.S. § 3927(a). This result comports with other decisions holding that breach of a duty to deposit and maintain funds in appropriate accounts can serve as a basis for criminal liability under this section of the Crimes Code. See *Commonwealth v. Rosenzweig,* 514 Pa. 111, 117, 522 A.2d 1088, 1091 (1987) (employee deposited checks that were payable to his employer into his own account rather than the employer's account); *Commonwealth v. Stockard,* 489 Pa. 209, 213–14, 413 A.2d 1088, 1090 (1980) (corporate officer used funds from corporate bank account to repay his personal loan); *Commonwealth v. Smail,* 365 Pa.Super. 118, 122–23, 529 A.2d 1, 3 (1987) (treasurer of an organization diverted funds from the organization's bank account to his own personal use), allocatur denied, 518 Pa. 649, 544 A.2d 961 (1988).

To summarize, a prima facie case has not been established with regard to count # 88–164. Dismissal of this count is affirmed. On counts # 88–163 and # 88–165, prima facie cases have been established. The dismissal of these counts is reversed.

Order of the Superior Court affirmed in part, and reversed in part.

LARSEN, J., files a concurring and dissenting Opinion in which PAPADAKOS, J., joins.

54

LARSEN, Justice, concurring and dissenting.

I concur in the result as to counts 88–163 and 88–165. With respect to count 88–164, however, I dissent.

The majority, in directing its attention to the absence of an escrow agreement in count 88–164, is elevating form over substance. What is essential here is that in all three counts the client gave appellee his money to hold because he trusted him as an attorney and because we, as the Supreme Court, had vouched for appellee's trustworthiness as an attorney. In all three counts, that money was obtained subject to a trust, express, implied or constructive. Appellee's clients had every right to believe that their money would be held by him until it could be disposed of as intended. Appellee violated that trust, not only with respect to counts 88–163 and 88–165, but also with respect to count 88–164.

PAPADAKOS, J., joins this concurring and dissenting Opinion.