HUDOCK, Judge,
dissenting:
I respectfully dissent. The majority mischaracterizes Appellant’s complaint on appeal. The issue is not, as stated by the majority, whether “[Appellant] was not properly informed of the elements for which he was charged particularly the second element.” Majority Opinion at p. 460. Such a characterization of the issue focuses on the words and conduct of the trial court and the Commonwealth in informing Appellant of the nature of the charge brought against him. It does not focus, as it should, on Appellant’s understanding and acknowledgement of the charge as expressed by him on the record.
*464 The elements of the crime of Theft By Failure to Make Required Disposition of Funds Received are as follows:
1. The obtaining of the property of another;
2. Subject to an agreement or known legal obligation upon the receipt to make specified payments or other disposition thereof;
3. Intentional dealing with the property obtained as the defendant’s own; and
4. Failure of the defendant to make the required disposition of the property.
Commonwealth v. Ohle, 503 Pa. 566, 581, 470 A.2d 61, 69 (1983) quoting Commonwealth v. Crafton, 240 Pa.Super. 12, 16, 367 A.2d 1092, 1094-95 (1976); 18 Pa.C.S.A. § 3927.
As stated by Appellant, the issue on appeal is whether Appellant failed to “acknowledge that he had 'an agreement or known legal obligation’ to dispose of the money in a particular fashion.” (Appellant’s Brief at p. 9). So phrased, this claim necessarily calls into question whether a factual basis for the plea was established on the record. Such an inquiry is mandatory. Commonwealth v. Reno, 303 Pa.Super. 166, 449 A.2d 630 (1982). To establish a factual basis for the plea, the trial court is required to determine whether the facts acknowledged by the defendant constitute the prohibited offense. Commonwealth v. Anthony, 504 Pa. 551, 475 A.2d 1303 (1984). As stated by Mr. Justice McDermott in Anthony:
This salutary requirement is to prevent a plea where in fact the legal requirements have not been met; and, name and define the offense, supported by the acts, so the defendant will know the legal nature of the guilt to which he wishes to plead.
Id., 504 Pa. at 559, 475 A.2d at 1307.
A careful review of the record reveals that the only facts acknowledged by Appellant were that he had collected the monies, with the intent of publishing a directory, and had used some of these funds, excluding the funds held in escrow, to prepare the directory. As a necessary part of undertaking the task of publishing, Appellant acknowl *465 edged that he paid salaries to his employees who also happened to be members of his immediate family. These acknowledged facts do not, in my view, constitute the prohibited offense. Thus, the trial court erred in accepting the plea since Appellant did not knowingly enter it. Appellant has, therefore, established “manifest injustice” and should be allowed to withdraw his plea.
This case does not present a similar factual scenario as that presented in Commonwealth v. Crafton, 240 Pa.Super. 12, 367 A.2d 1092 (1976),[1] where a travel agent took funds as payment for a trip, commingled them with working funds, and subsequently failed to maintain enough funds to pay the airline carrier, or the facts presented in Commonwealth v. Turrell, 526 Pa. 42, 584 A.2d 882 (1990), where an attorney commingled funds and thus failed to keep client’s funds, entrusted to escrow, inviolate. There is no indication in the present case that Appellant commingled any funds held in escrow. Unlike Crafton and Turrell, an additional obligation rested upon Appellant after collecting the funds for the directory; rather than holding money to buy airline tickets or in escrow until making the directed payment, Appellant had to create and produce the product for which he solicited the funds. How can any reasonable business man or woman accomplish such a feat without spending any money earmarked for the venture?
The difficulty in finding that the facts acknowledged by Appellant constitute the prohibited offense is the fact that Appellant allegedly solicited the funds to “print” a directory but, of necessity, needed to use some of these same funds to “publish” the directory. While the participants in the colloquy sometimes use the terms “print” and “publish” interchangeably, in common parlance “publish” has a broader meaning than “print”. To “publish” a work involves many production functions such as advertising, sales, and *466 administration as well as the actual printing of it. A careful reading of the plea transcript demonstrates this inherent difficulty:
[Defense Counsel]: Your Honor, just to comment in regard to what [the A.D.A.] has indicated, first, I would indicate that at the preliminary hearing only four people would have indicated that there was an escrow that they were promised that their monies would be put into an escrow account and it wasn’t — I think we should state on the record [Appellant] specifically denies that fact and, in fact, we have contracts signed by at least some of those four which would indicate to the contrary that they had actually agreed to the one third, one third, one third plan, we’re not going to acknowledge or admit today that there was any intentional deception in terms of telling a particular client that monies were going to go into an escrow account and that he failed to put them into that escrow account, that’s not what we’re admitting to, what were admitting to isn’t what the Court can find.
THE COURT: Is using the money that was not agreed to put into the escrow account for his own personal purposes rather than for publishing a directory.
[Defense Counsel]: Yes, Your Honor, I think it should be stated for the purpose of sentencing although I’m fully aware that ignorance of the law is no excuse and he’s still responsible for those actions, we are not in this guilty plea colloquy admitting or acknowledging that this was intentional that he intentionally took the money and at the time he took the money had no intention to publish the directory, what we are saying is that he failed to use the money for that particular purpose, I think it’s important to note that.
THE COURT: Then I think you just talked yourself right out of the guilty plea, one of the requirements is that [Appellant] intentionally is his conscious object and purpose dealt with the property of his own and failed to make the required disposition and if there was no intention on his part I cannot accept the plea.
*467 [Defense Counsel]: Where the intention comes in, Your Honor, he took the money and used the money and did not specifically use the money for its intended purpose.
THE COURT: But now you’re saying this is intention and there either was or was not intention on his part to use this money as his own and failed to make the required disposition that intention was either there or it was not there. If you’re stating for him and he agrees to your statements that it was not there from the recitation of the facts you gave me I could certainly find that that intention was there from the statement that there was no intention coupled with his statement that there was no— couple of his statements that his problem began when he realized that the escrow account had been mailed back and then no longer had the money, your statement there was no intention to deceive anybody or to use the property as his own he intended to do this all along the required intent is not there for this kind and I cannot accept the plea.
[A.D.A.]: Your Honor, if I could—
[Defense Counsel]: If I could speak to that I opened up this discussion, let me explain it. He’s not charged with Theft by Deception that at the time he took the money he deceived these individuals.
THE COURT: No, it’s—
[Defense Counsel]: What he’s charged with is Theft by Failure to Make Required Disposition.
THE COURT: One of the elements of that charge is that [Appellant] intentionally dealt with the property obtained as his own and failed to make the required disposition. [Defense Counsel]: And according to the statement that he took the money and used it, paid the money out in salaries and used the money on behalf of the English family during that time without using the money for the publication of the directory is the crime.
THE COURT: I would agree with that, but I thought you were saying that there was no intention to do that. *468 [Defense Counsel]: He intentionally used the money from the time he began to collect it through March 15th of 1987, he used the money and paid that money out throughout the course of that time to his family.
THE COURT: And failed to make the required disposition by failing to print or produce the directory.
[Defense Counsel]: Yes. What I’m saying, Your Honer, is he intended throughout the course as he was using this money he still felt that he could financially publish.
THE COURT: That’s a matter for argument at sentencing.
[Defense Counsel]: I just thought it was appropriate to bring it up at this time for the guilty plea because that is our primary argument at the sentencing.
THE COURT: I understand what your argument will be at sentencing, you had me thoroughly confused. [A.D.A.], do you have any questions?
[A.D.A.]: Your Honor, I would just state that the reason the Commonwealth was willing to take the plea to the Theft By Failure to Make Required Disposition is that, I think that there may be some validity to the Defense argument that in the initial instance when he first began to collect money his intentions may have been honest, but as time went along and it did not financially fly, he began to use the money for his own purpose.
(N.T. 3/22/89 at pp. 21-25).
Had Appellant already composed the directory and had it ready for printing, I would find that the subsequent collection of funds, and improper use of them, would constitute the prohibited offense. So, too, if he had used the funds for purposes other than publishing the directory, such as luxurious vacations, cars, or investments in the stock market. The final statement above, made by the Assistant District Attorney, totally mischaracterizes the facts acknowledged by Appellant. There never was an acknowledgment of Appellant that he used the funds other than for legitimate production costs such as salaries.
*469 As stated above, the facts in this case are not such that the Appellant was given funds to hold inviolate, commingled them, and then later failed to disburse them in a manner agreed to by the other party. I find the facts acknowledged by Appellant to be similar to those presented to this Court in Commonwealth v. Austin, 258 Pa.Super. 461, 393 A.2d 36 (1978). In Austin, a contractor received advance money for the purchase of materials on a construction contract. The defendant performed for two months when he realized that he had underestimated the job. Having run out of money, the defendant stopped work on the project. Although some of the advance money was not spent on materials, the evidence showed that all of the money was spent in a manner which could be construed to have been necessary for the completion of the job.
Initially, in Austin, this Court, per the Honorable William F. Cercone, found that the first above-enumerated element was not met as it was not believed that the acceptance of advance money on a construction contract constituted the property of another. Citing to Commonwealth v. Bartello, 225 Pa.Super. 277, 301 A.2d 885 (1973), this Court stated that “the title as well as the ownership of the money passed to the defendant.” Commonwealth v. Austin, 258 Pa.Super. at 467, 393 A.2d at 39.[2] The funds solicited in the present case are also properly characterized as advance money for a service which is to be provided in the future, 1. e., to prepare, produce and print a telephone directory. As the funds at issue were not placed in escrow, I would find that these funds did not constitute “property of another.” § 3927.
*470 ■ The Austin court next found that there was insufficient evidence as to the second element enumerated above, i.e., subject to an agreement or known legal obligation upon receipt to make specified payments or other disposition. In Austin, the Commonwealth argued that the defendant violated the criminal statute by failing to use the entire sum of money to purchase materials. Upon reviewing the documentary evidence, this Court found that while the defendant was certainly obligated to ultimately purchase the materials necessary to complete the work, the evidence failed to establish, beyond a reasonable doubt, that the defendant was legally obligated to utilize the advance payment solely for the purchase of construction materials. This discussion gets to the real issue in the present case. The evidence of the contracts or agreements, either verbal or written, are scarce in the present record. As stated above, it is my view, upon review of the entire guilty plea colloquy, that the funds that were solicited and not placed in escrow were not given for the specific purpose of printing the directory, but rather, constitute contributions to the general production costs of the directory, or “publishing” costs.
As to the third element, the intentional dealing with the property as the defendant’s own, the Austin court again found that the evidence was once again insufficient since the expenditures made by the defendant could have been construed to have been necessary for the ongoing operation of his sole proprietorship and his completion of the project. Once again, in the case sub judice, the monies paid out in salaries by Appellant were obviously part of the production costs of the directory. Thus, I would find that it was not knowingly acknowledged at the plea colloquy that Appellant used these funds for his own purposes.
In discussing the final element, the failure to make the required disposition of funds received, the Austin court held that the cumulative effect of the lack of evidence as to the three prior elements was highly probative of the defendant’s lack of criminal intent. The court reiterated its *471 earlier statement that while the defendant “may have to answer for his actions in a civil forum, [the defendant’s] conduct does not constitute a criminal offense.” Commonwealth v. Austin, 258 Pa.Superior Ct. at 471, 393 A.2d at 41. The earlier statement made by the court is as follows: “[H]is duty was to perform the services under the contract and failure to perform was a breach of that contract with its proper remedy in a civil forum.” Id., 258 Pa.Superior Ct. at 467, 393 A.2d at 39. In the present case, Appellant clearly acknowledged his continuing intention to publish the directory had he been financially able to do so. He also acknowledged, via his attorney, that he had performed some work on the project, including the submission of proofs to several of his clients. These acknowledged facts do not constitute the crime to which he pleaded guilty.
The effect of the majority opinion is to make criminal the use of funds for general operating purposes of a business when those funds are received in exchange for a product to be produced and delivered in the future. In effect, the recipient of any such funds becomes a guarantor of the success of his business.
I would reverse the order of the trial court and remand to allow Appellant to withdraw his guilty plea.[3]
MONTEMURO, BECK and POPOVICH, JJ. join this dissenting opinion.

. While I also agree that Crafton, as reported in the Atlantic Reporter, misquotes the criminal statute at issue, and may have caused confusion below, I believe that this confusion on the part of the trial court and defense counsel only bolsters a finding that the plea was unknowingly made.

. The Austin court also distinguished the facts with which it was presented from those of Commonwealth v. Crafton, supra:
In Commonwealth v. Crafton, [supra ], a travel agent received money which she was required to turn over to a travel wholesaler as payment for a scheduled tour. This procedure made the travel agent exactly what her title says — an agent of the plaintiffs in turning their money over to a third person. This is an entirely different situation from the one before us where appellant received advance money on a construction contract.
Commonwealth v. Austin, 258 Pa.Super. at 467, 393 A.2d at 39.

. I find the Commonwealth’s argument that the above quoted excerpt from the colloquy came after the plea was entered and therefore to be of no effect, to be without merit. As noted by the majority, when determining whether a showing of manifest injustice has been made, this Court must look to the totality of the circumstances attendant upon the entry of the plea. Majority Opinion at p. 124, citing Commonwealth v. Shaffer, 498 Pa. 342, 446 A.2d 591 (1982). It is my belief that the subsequent exchange between the trial court and defense counsel demonstrated that the earlier perfunctory exchange between the trial court and Appellant was not truly representative of the facts acknowledged by Appellant. The fact that Appellant truly intended on publishing the directory at all times, was not as characterized by the trial court and defense counsel, a matter for sentencing, but was the pivotal issue in determining whether the acts acknowledged by Appellant constituted the crime charged.