J-A05004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ZACHARY DEMARCO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHOEMAKER-SKANSKA, A JOINT | : | No. 1323 EDA 2023 |
| VENTURE, SKANSKA USA BUILDING, | : | |
| INC., SHOEMAKER CONSTRUCTION | : | |
| COMPANY, MACERICH MANAGEMENT | : | |
| COMPANY, PENNSYLVANIA REAL | : | |
| ESTATE INVESTMENT TRUST, AND | : | |
| ARMOUR & SONS ELECTRIC, INC. | : | |

Appeal from the Order Entered September 8, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 191001730

BEFORE: DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 13, 2024**

Appellant Zachary DeMarco appeals from the order entered by the Philadelphia County Court of Common Pleas on September 8, 2022, denying Appellant's motion to disqualify opposing counsel from representing Appellee Armour & Sons Electric, Inc. ("Armour") while also representing the other defendants in this personal injury litigation. After careful consideration, we affirm.

This collateral appeal challenging Armour's representation arises from litigation in which Appellant seeks to recover for injuries he suffered on November 6, 2017, when he fell down an unlit stairwell at a construction site

at 901 Market Street in Philadelphia, while working for Steel Suppliers Erectors, Inc., a subcontractor on the project.

On October 17, 2019, Appellant filed suit against Appellees Shoemaker-Skanska, A Joint Venture; Skanska USA Building, Inc.; Shoemaker Construction Co.; Pennsylvania Real Estate Investment Trust; and Macerich Management Company ("Original Defendants").[1] The law firm of Fowler Hirtzel McNulty & Spaulding, LLP ("Law Firm") represented all the Original Defendants pursuant to an Owner Controlled Insurance Program (the "OCIP"), which "provided liability coverage for all contractors and subcontractors working on the project." Trial Ct. Op. at 3.

Appellant contends that he did not learn of Armour's potential responsibility for the stairwell power outage until the Original Defendants provided the full incident report on October 26, 2021. The report provided in relevant part as follows:

> On Monday, November 6 Armor [sic] Electric was working on an existing lighting breaker that was mislabeled which powered the lights to Building A, Stairwell 4A when iron worker [Appellant and two others] were using the dark stairwell to exit the building and leave for their break when [Appellant] tripped at the bottom of the stairs, and rolled his left ankle.

[Appellant's] Motion to Disquality Counsel for [Armour], 6/9/22, Ex. F Incident Report No. 7824 ("Incident Report").

---

[1] Shoemaker-Skanska led the construction at the site and is a joint venture between Skanska USA Building, Inc., and Shoemaker Construction Co. The remaining two defendants "have ownership and operating responsibilities pertaining to the property[.]" Trial Ct. Op., 9/8/23, at 1 n.2.

- 2 -

On February 1, 2022, Appellant's counsel deposed Daniel Pechin, the corporate designee of Shoemaker-Skanska. Appellant claims that Mr. Pechin's deposition was the first time that the Original Defendants revealed that Armour should have notified the Original Defendants prior to any potential power outage. Appellant's Br. at 9-10. Appellant relies upon the following exchange:

> [Question:] . . . .[U]nder daily hazard analysis, there is a place where Armour could have made a statement that they were going to be working on circuits and may be shutting off parts of the building where other trades would be working, but how would they get that information to you, the joint venture, if you were not seeing these documents until –-
>
> [Pechin:] They should have told us before. I mean, if they know they are going to impact an existing building system that we rely on, they are to let us know in advance that we need to make other provisions.

Dep. of Pechin, 2/1/22, at 126. Mr. Pechin, however, expressed uncertainty as to "what happened[,]" noting that the breaker "could have just tripped[,]" instead of being shut off by Armour. *Id.* at 101-02.

On February 14, 2022, following Mr. Pechin's deposition, Appellant filed a Motion to Amend the Complaint to add Armour as a defendant. Original Defendants did not contest the amendment, which the trial court granted.

On May 23, 2022, Law Firm entered its appearance on behalf of Armour and filed preliminary objections, asserting that the statute of limitations expired on November 6, 2019.[2]

---

[2] On July 6, 2022, the trial court overruled Armour's preliminary objections in a brief order without explanation.

On June 9, 2022, Appellant filed a Motion to Disqualify Counsel for [Armour]. He claimed that Pennsylvania Rule of Professional Conduct 1.7(b)(3) prohibited Law Firm from representing Armour due to a non-waivable conflict of interest. Appellant argued that Law Firm had taken the following two positions while representing Original Defendants that were directly adverse to the interest of Armour:

> 1) relating to liability: Armour should have told the [O]riginal Defendants that they were going to shut the power off; and 2) relating to the timeliness of adding Armour as a party: [Appellant] had no way of knowing that Armour was a potentially responsible party until February 1, 2022 because of counsel's delay in producing documents and information that were always in the [O]riginal Defendants' possession

Motion to Disqualify Counsel, 6/9/22, at ¶ 35.

Original Defendants and Armour denied any conflict of interest. Moreover, they maintained that they consented to any potential conflict of interest when they "agreed to joint representation, pursuant to the OCIP." [Appellees'] Response to [Appellant's] Motion to Disqualify Counsel for [Armour], 6/27/22, at ¶¶ 8, 20. They asserted attorney client privilege in regard to documents relating to the joint representation but offered to produce them *in camera*.

On September 8, 2022, following briefing and argument, the trial court denied the Motion to Disqualify. On September 26, 2022, Appellant filed a petition asking the trial court to certify the order denying disqualification for interlocutory appeal by permission, which the trial court also denied.

- 4 -

On October 31, 2022, Appellant filed a Petition for Permission to Appeal to this Court. On June 2, 2023, this Court transferred the case to the appeals docket "as an appeal from the collateral ordered entered September 8, 2022." Order, 6/2/23, 105 EDM 2022.[3] The trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant raises the following issues before this Court:

1) Do non-clients have standing to seek disqualification of opposing counsel pursuant to Rule 1.7 of the Rules of Professional Conduct?

2) Do the facts and procedural history reasonably demonstrate that Defendants-Appellees' positions as to liability and the timeliness of [Appellant's] claims are directly adverse, thereby creating a non-consentable conflict of interest that prohibits opposing counsel from representing Armour & Sons Electric, Inc. pursuant to the Rules of Professional Conduct as interpreted by Pennsylvania case law?

3) Do opposing counsel's actions demonstrate the appearance of impropriety by abandoning Defendants-Appellees' adverse positions against each other as to liability and the timeliness of [Appellant's] claims, thereby calling into question opposing counsel's ability to represent each Defendant-Appellee and impeding [Appellant's] fundamental right to a fair trial?

4) Do Defendants-Appellees waive attorney-client privilege protection from the production of documents evidencing a joint defense agreement and informed consent by placing at issue the existence and content of documents establishing a joint defense agreement and informed consent to support their factual averment that each Defendant-Appellee has waived a conflict of interest?

_____

[3] On April 14, 2023, while the Petition for Permission to Appeal was pending in this Court, the trial court granted summary judgment to Shoemaker-Skanska, A Joint Venture; Skanska USA Building, Inc.; and Shoemaker Construction Co. but denied summary judgment to the other defendants.

Appellant's Br. at 4-5.

**A.**

This Court employs a "plenary standard of review" when reviewing a trial court order addressing disqualification of counsel. *E.R. v. J.N.B.*, 129 A.3d 521, 526 (Pa. Super. 2015) (citation omitted).

While courts have authority to "disqualify attorneys for violating ethical rules[,]" they "should not lightly interfere" with a party's right to choose their own counsel. *Id.* (citation omitted). Rather, "disqualification is appropriate only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires." *Id.* (citation omitted). The burden of proof is on the party requesting disqualification of counsel. *Dougherty v. Philadelphia Newspapers, LLC*, 85 A.3d 1082, 1087 (Pa. Super. 2014).

Pennsylvania's Rules of Professional Conduct "provide a framework for the ethical practice of law." Pa.R.P.C. Preamble ¶ 15. While a rule violation may result in disciplinary proceedings, the drafters clarified that a rule violation "does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation[,]" warning that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* at ¶ 19.

In the instant case, Appellant seeks disqualification based upon an asserted violation of Pa.R.P.C. 1.7, entitled "Conflict of Interest: Current Clients." Rule 1.7 instructs that "a lawyer shall not represent a client if the

representation involves a concurrent conflict of interest." Pa.R.P.C. 1.7(a). A conflict of interest exists if either: "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." *Id.*

A lawyer, however, may represent clients "[n]otwithstanding the existence of a concurrent conflict of interest" if the following four criteria are met:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent.

*Id.* 1.7(b). Whether a client may consent "is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their informed consent[.]" *Id.* cmt. 15.

The Comments to Rule 1.7 acknowledge the potential conflict of interest when one lawyer represents multiple co-plaintiffs or co-defendants. *Id.* cmt. 23. Specifically, "[a] conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question." *Id.* If the requirements of

Rule 1.7(b) are met, however, "common representation of persons having similar interests in civil litigation is proper[.]" ***Id.***

**B.**

Appellant first questions whether "non-clients have standing to seek disqualification of opposing counsel[.]" Appellant's Br. at 4, 24-36. We reject Appellant's issue outright because the trial court "did not rule one way or another" as to Appellant's standing and, indeed, suggested that there were "no standing requirements that would prevent a party from raising" a violation. Trial Ct. Op. at 9. Accordingly, as Appellant is not aggrieved regarding this issue, we do not address the merits.

**C.**

Appellant next argues that the trial court should have disqualified Law Firm from representing Armour because Armour and the Original Defendant's "positions as to liability and the timeliness of [Appellant's] claims are directly adverse, thereby creating a non-consentable conflict of interest" under Rule 1.7. Appellant's Br. at 4, 37-45. Appellant contends that Armour's position is directly adverse to the Original Defendants' position because the Incident Report and the deposition of Mr. Pechin pointed to Armour as the entity responsible for the power outage in the stairwell and that Armour did not alert Shoemaker-Skanska to the potential power outage. ***Id.*** at 43-45. In part, Appellant contends that the conflict of interest is not waivable under Rule 1.7(b)(3) because Armour and the Original Defendants should be asserting claims against each other. Appellant's Reply Br. at 16. He argues that

disqualification of Law Firm's joint representation is the only way to "prevent the injustice of directly adverse co-defendants waiving cross-claims and colluding toward a zero-sum outcome[,]" thus violating his right to a fair trial. *Id*. at 1. We disagree.

Like the trial court, we conclude that the record does not support Appellant's contention that the interests of Armour and the Original Defendants are directly adverse. Neither the Incident Report nor Mr. Pechin's testimony conclusively demonstrate that Armour was at fault. Rather, the Incident Report merely states that Armour "was working on an existing lighting breaker that was mislabeled which powered the lights to Building A, Stairwell 4A" at the time Appellant fell; it does not indicate Armour's negligence. Incident Report. Similarly, as the trial court observed, "Mr. Pechin's testimony [was] equivocal - he testified that if Armour knew they were going to impact [an] existing building system, he should have been told. However, he didn't know . . . what actually happened to cause the lights to go out and it was possible that a breaker just tripped." Trial Ct. Op. at 8. Moreover, Appellant did not present any testimony setting forth Armour's position to demonstrate a conflict with the Original Defendants regarding liability for the incident. *Id.*

Upon review, we find that Appellant has not established that the parties' interests are "directly adverse" or that there is a "significant risk" that Law Firm's representation of Armour "will be materially limited by" its representation of the Original Defendants. Pa.R.P.C. 1.7(a). Absent such

demonstration, we refuse to interfere with Appellees' choice of counsel or meddle with their litigation strategy as to crossclaims. Thus, we conclude that Appellant has not met his burden to disqualify counsel.

**D.**

In his third issue, Appellant contends that Law Firm's representation of Armour and the Original Defendants presents an "appearance of impropriety." Appellant's Br. at 45-49. We reject Appellant's argument because he attempts to invoke the outdated standard of "appearance of impropriety" previously utilized in Canon 9 of the Code of Professional Responsibility. *See Am. Dredging Co. v. City of Philadelphia*, 389 A.2d 568, 571 (Pa. 1978) (quoting Canon 9 as providing "A Lawyer Should Avoid Even the Appearance of Professional Impropriety"). The Supreme Court, however, replaced the Code of Professional Responsibility and its Cannons with the Rules of Professional Conduct by order of October 16, 1987. *See Commonwealth v. Turrell*, 584 A.2d 882, 885 n.2 (Pa. 1990). As set forth in the prior issue, Appellant failed to demonstrate a violation under current Rule 1.7. [4]

_____

[4] Appellant contends that his "appearance of impropriety" argument is directed to his claim that joint representation impedes his right to a fair trial. Appellant's Reply Br. at 12-16. We do not address this argument because the fair trial analysis for a disqualification motion is premised upon a violation of the Rules of Professional Conduct, which Appellant has not demonstrated. *See E.R. v. J.N.B.*, 129 A.3d at 526.

We additionally agree with the trial court that Appellant's claim has "no merit whatsoever." Trial Ct. Op. at 11. The court observed that if it used Appellant's standard for appearance of impropriety it "would be disqualifying counsel on a daily basis." *Id.*

**E.**

Finally, Appellant claims that Appellees waived attorney-client privilege relating to "documents evidencing a joint defense agreement and informed consent." Appellant's Br. at 4-5, 50-52. The trial court, however, emphasized that it did not rule on this issue. Trial Ct. Op. at 10. While Appellant requested the documents and Appellees asserted attorney-client privilege, Appellant does not direct this Court to a motion to compel production of these documents. Moreover, the trial court found that it did not require these documents to decide the motion to disqualify. ***Id.*** at 11. The appropriate avenue to address this claim is through a discovery motion not a motion to disqualify. As with Appellant's prior issues, this issue warrants no relief.[5]

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2024

---

[5] In conformance with Pa.R.A.P. 2501, Appellees' counsel acknowledged at argument a change in the status of a case relied upon in their brief. Specifically, the Pennsylvania Supreme Court determined that it had improvidently granted certification of a question from the Third Circuit. ***Pa. Prof'l Liab. Joint Underwriting Ass'n v. Governor of Com.***, 7 EAP 2023 (Pa. Feb. 21, 2024). Upon review, we find that the Supreme Court's recent decision addresses issues unrelated to the instant case.